RANDOLPH, Justice,
for the Court.
¶ 1. Mary S. Mitchell filed a personal-injury suit against Robinson Property Group (“Robinson Property”), a Mississippi Limited Partnership, stemming from a *242 trip-and-fall accident at the Horseshoe Casino in Robinsonville, Mississippi. A jury determined the value of Mitchell’s damages at $80,000, but deemed her thirty percent at fault. Thus, final judgment was entered in her favor for $56,000. Finding no error, this Court affirms.
FACTS
¶ 2. On March 29, 2006, Mitchell, a seventy-two-year-old resident of Memphis, Tennessee, and a group of her friends visited the Horseshoe Casino in Robinson-ville, Mississippi. After playing the slot machines, Mitchell walked over to the snack bar and ordered a sandwich. While awaiting her order, Mitchell decided to play her one remaining “fifty-cent coupon” on a nearby slot machine. As Mitchell approached the machine, the heel of her shoe caught on a metal plate, causing her to fall. This metal plate had a two-inch lip and formed the base for attaching a slot-machine seat to the floor.
¶3. The parties dispute whether the area in which the accident occurred was barricaded. Mitchell stated that several aisles were roped off, but she did not see any barricades around this particular area. A companion, Bettie Jolly, testified that she did not see any barricades. Both women, however, did notice that the seats in this area were in some disarray. Robinson Property insisted that the area had been roped off, and that Mitchell had failed to notice, or had blatantly ignored, the barricade.
¶ 4. Mitchell was transported to the emergency room at Baptist Memorial Hospital-DeSoto in Southaven, Mississippi, and then transferred to Methodist Le Bonheur Germantown Hospital in German-town, Tennessee. She suffered a broken ankle and underwent orthopedic surgery several days later.
¶ 5. Mitchell experienced additional complications from the injury. While hospitalized following her surgery, Mitchell contracted a staph infection in one eye and one arm. Thereafter, she was confined to a wheelchair for nearly six weeks. She described the pain as unbearable. Mitchell testified that she also had difficulty breathing and consulted both a lung specialist and a heart specialist for treatment. Additionally, she received psychological treatment for depression. Mitchell also testified that she missed a substantial period of work, and that when she returned to work, her hours at a local gift shop were reduced from eight hours a day, three days a week, to four hours a day, three days a week, due to her inability to stand for prolonged periods of time.
¶ 6. Mitchell filed suit against Robinson Property in the Circuit Court of Tunica County, Mississippi, which culminated in a jury verdict in her favor. Contested issues at trial included, inter alia, whether the area was barricaded and the accuracy of Mitchell’s purported medical expenses. Rather than submitting separate bills and records associated with her medical expenses, Mitchell offered a summary as evidence, thereby excluding documents which revealed Medicare payments. Attached to the summary was some supporting documentation. On cross-examination, Robinson Property confronted Mitchell regarding discrepancies between the summary and the attached bills. Robinson Property also pointed out that some of the bills failed to reflect the amount shown in the summary. Robinson Property contested whether attached bills for treatment of a urinary-tract infection, cholesterol check, routine blood work, and a $10,198 bill from the Sutherland Clinic which dated back to June 18, 1996, were related to the 2006 fall. Mitchell testified that she did not know how the inclusion of the Sutherland Clinic bill had occurred, as she had not *243 seen the summary prior to taking the witness stand. Mitchell testified someone had made a mistake[1] to include the entire bill, but that she had incurred some medical expenses at Sutherland Clinic attributable to the 2006 fall. On redirect, it was established that Mitchell’s counsel had prepared the summary, and Mitchell testified that any expense incurred at the Sutherland Clinic before her fall should be taken off her claim. Mitchell sought special damages, including lost wages, of $43,383.
¶ 7. After hearing all the evidence, the jury established Mitchell’s total damages at $80,000 and deemed her thirty percent at fault. Accordingly, the circuit court entered a final judgment in the amount of $56,000. Mitchell then filed a motion for additur, which the circuit court denied. Robinson Property filed a motion for new trial, asserting that the circuit court had erred in denying its motion for directed verdict and in refusing to allow impeachment of Mitchell regarding her assertion of financial devastation, relying on evidence it proffered during trial that a large portion of her medical expenses were paid by insurance. After a post-trial hearing, the circuit judge entered an order denying Robinson Property’s motion for new trial.
¶ 8. Robinson Property now appeals to this Court, raising the following assignments of error: (1) whether the circuit court erred in refusing to recognize an impeachment exception to the collateral-source rule, and (2) whether the circuit court abused its discretion in failing to grant Robinson Property’s motion for new trial.
DISCUSSION
I. Whether the circuit court erred in refusing to recognize an impeachment exception to the collateral-source rule.
¶ 9. This Court reviews a trial judge’s decision to admit or deny evidence under an abuse-of-discretion standard. See Whitten v. Cox, 799 So.2d 1, 13 (Miss. 2000) (quoting Floyd v. City of Crystal Springs, 749 So.2d 110, 113 (Miss.1999)). If an error involves the admission or exclusion of evidence, this Court “ ‘will not reverse unless the error adversely affects a substantial right of a party.’ ” Id.
¶ 10. During the direct examination of Mitchell, the following exchange occurred:
[Mitchell’s attorney]: You have told the jury what expenses you have incurred. What are you asking the jury to give you in the way of compensation to compensate you for this injury?
[Mitchell]: Well, I just want the jury to determine that, except I would like to have the medical bills and my expenses, and, of course, that’s really just partial expenses. I couldn’t even think of everything that I have spent and the gas and the cost of everything, the going back and forth to physical therapy and all of that, but I think the jury would be fair in awarding whatever they feel would be right for something as serious as this.
[Mitchell’s attorney]: Do you think that ought to be a substantial sum of money, more than the $50,000 medical expenses you have?
[Mitchell]: Well, I would hope so. I had to — I bomived money to live on. I refinanced my house. I know that’s probably not a problem I’m supposed to *244 bring up, but it has — it’s devastated me financially, too.
(Emphasis added). Additionally, the following exchange addressed Mitchell’s lost wages:
[Mitchell’s attorney]: As a result of this, did you lose some time from work while you were off with all of this surgery and so forth?
[Mitchell]: Oh, yes. I didn’t work again until — several months ago, I started back part-time.... I work four hours three days a week, and that’s about all I can stand on this ankle still, and it’s been a year and a half....
[Mitchell’s attorney]: Are you able to work a full eight-hour day now?
[Mitchell]: No, not yet.
¶ 11. Robinson Property argues that it sought to introduce evidence that the medical bills incurred by Mitchell were substantially paid by insurance for the purpose of impeaching her testimony, not to mitigate or reduce her damages. Robinson Property contends that Busick v. St. John, 856 So.2d 304 (Miss.2003), and Geske v. Williamson, 945 So.2d 429 (Miss.Ct. App.2006), both recognized an impeachment exception to the collateral-source rule. The circuit judge, however, denied Robinson Property’s request, relying upon McCary v. Caperton, 601 So.2d 866 (Miss.1992), and held that there was no impeachment exception to the collateral-source rule.
¶ 12. It has long been established in our state that, under the collateral-source rule, “a defendant tortfeasor is not entitled to have damages for which he is liable reduced by reason of the fact that the plaintiff has received compensation for his injury by and through a totally independent source, separate and apart from the defendant tortfeasor.” Cent. Bank of Miss. v. Butler, 517 So.2d 507, 511-12 (Miss.1987) (citations omitted). Compensation or indemnity received by the plaintiff from a collateral source such as insurance:
cannot be set up by the [defendant] in mitigation or reduction of damages
[[Image here]]
The wrongdoer is not entitled to have the damages to which he is liable reduced by proving that plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him. Under this general rule, insurance in behalf of the injured person cannot be set up the wrongdoer in mitigation of the loss.
Coker v. Five-Two Taxi Serv., 211 Miss. 820, 826, 52 So.2d 356, 357 (1951) (quoting 25 C.J.S. Damages, § 99) (emphasis added). See also Burr v. Miss. Baptist Med. Ctr., 909 So.2d 721, 728 (Miss.2005).
¶ 13. Prior to Busick, this Court had not recognized an impeachment exception to the collateral-source doctrine. See Busick, 856 So.2d at 309 (citing, e.g., McCollum v. Franklin, 608 So.2d 692, 695 (Miss.1992); Eaton v. Gilliland, 537 So.2d 405, 408 (Miss.1989); Cent. Bank of Miss., 517 So.2d at 511; Star Chevrolet Co. v. Green by Green, 473 So.2d 157, 162 (Miss.1985); Preferred Risk Mut. Ins. Co. v. Courtney, 393 So.2d 1328, 1332-33 (Miss.1981)). In Busick, this Court noted that several states have recognized a limited impeachment exception to the collateral-source rule. See Busick, 856 So.2d at 309-10 (citing, e.g., Warren v. Ballard, 266 Ga. 408, 467 S.E.2d 891, 893 (1996); Corsetti v. Stone Co., 396 Mass. 1, 483 N.E.2d 793, 801 (1985); Evans v. Wilson, 279 Ark. 224, 650 S.W.2d 569, 570 (1983); Hack v. State Farm Mut. Auto. Ins. Co., 37 Wis.2d 1, 154 N.W.2d 320, 325 (1967)). There, the:
evidence related to Busick’s health insurance was admitted to impeach her testimony that she suffered permanent injuries as a result of the accident. Bu- *245 sick testified that she ceased physical therapy because she could no longer afford it. The fact that she spent only $45 on that therapy discredited her testimony.
Busick, 856 So.2d at 310 (emphasis added). This Court held that “[t]he testimony was not solicited for the purposes of mitigating her loss or reducing damages owed to Busick.” Id. Therefore, this Court held there was “no reversible error ... in allowing this testimony with an appropriate limiting instruction.” Id.
¶ 14. While “impeachment exception to the collateral-source rule” has been the terminology used by some courts, that phrase is a bit misleading and may cause confusion. An “exception” is defined as “[o]ne that is excepted, esp. a case not conforming to normal rules.” Webster’s II New College Dictionary 390 (3d ed.2001). The “collateral-source rule” is in no way excepted or excluded by the impeachment of testimony. The rule remains unchanged, and a defendant may not use payments received from a third party to mitigate or reduce a plaintiffs damages. See Coker, 52 So.2d at 357. The misnomered “exception” pertains to impeachment of false testimony by evidence of collateral-source payments. Therefore, correctly stated, the issue is whether a defendant may cross-examine the plaintiff regarding collateral-source payments, for the narrow purpose of impeaching false testimony, as approved by the 2003 Busick Court. See Busick, 856 So.2d at 310.
¶ 15. It is a given, requiring no citation, that courts should never condone false testimony. When a witness falsely swears that he or she paid, as opposed to incurred, medical expenses when, in fact, the medical expenses were paid by a third party, the aforementioned principle is violated. Therefore, to the extent that courts of this state have held that evidence of collateral-source payments may not be introduced for the purpose of impeaching false or misleading testimony, those decisions are expressly overruled. See Corsetti, 396 Mass. at 17, 483 N.E.2d 793 (quoting Goldstein v. Gontarz, 364 Mass. 800, 812, 309 N.E.2d 196 (1974)) (“in some circumstances, evidence of collateral source income may be admissible, in the discretion of the trial judge, ‘as probative of a relevant proposition, say “control” or credibility of a particular witness.’”) (emphasis in original). Permitting evidence of collateral-source payments for the narrow purpose of impeaching false or misleading testimony is consistent with the Mississippi Rules of Evidence. Rule 607 provides that “[t]he credibility of a witness may be attacked by any party....” Miss. R. Evid. 607. Therefore, an attack upon the credibility of a witness through the impeachment of false or misleading testimony is permissible. However, any evidence to be admitted under Rule 607 must always first be deemed relevant, see Mississippi Rule of Evidence 401-402, and then filtered through Rule 403.[2] Moreover, as in Bu-sick, granting a limiting instruction may be appropriate, so as to avoid jurors being led “to consider plaintiffs’ claims unimportant or trivial or to refuse plaintiffs’ verdicts or reduce them, believing that otherwise there would be unjust double recovery.” Corsetti, 396 Mass. at 17, 483 N.E.2d 793 (quoting Goldstein, 364 Mass. at 809, 309 N.E.2d 196).
*246 ¶ 16. Today’s decision also comports with the mandate articulated in our rules of evidence. Rule 102 provides that our rules of evidence shall promote the “growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.” Miss. R. Evid. 102. The benefits derived from permitting such inquiry are minimally two-fold. First, it eliminates the judicial conundrum of allowing known false testimony to be considered by a jury. Second, it eliminates jury consideration of an illusory element of damages premised on false testimony.
¶ 17. We can agree with the separate opinion of Justice Kitchens that evidence of collateral-source payments “is not relevant upon the inquiry as to whether one party has wronged another.” (Concurring-In-ResulNOnly Opinion at ¶ 32). No less true, however, is that the veracity of any party is relevant, which is the crux of this Court’s decision, i.e., the condemnation of false testimony. Justice Kitchens’s suggestion that today’s decision abrogates the rule is unclear, as the Busick Court decided this issue six years ago. See Busick, 856 So.2d at 310. The cases relied upon by Justice Kitchens predate Busick. Moreover, Vance v. Hervey, 253 Miss. 751, 179 So.2d 1 (1965), cited in Justice Kitchens’s separate opinion, provides additional rationale for permitting evidence of collateral-source payments for the narrow purpose of impeaching false or misleading testimony in Busick-type cases. In Vance, “[t]he plaintiff was permitted to testify on cross-examination, over the objection of his attorney, that he had received weekly insurance benefits from January 1963 through July 1964 for the first injury, and this is assigned as error.” Id. at 754, 179 So.2d 1. While acknowledging that Coker and Ethridge v. Goyer Company, 241 Miss. 333, 131 So.2d 188 (1961), “pronounce sound law,” this Court held that:
they have no application to the case at bar for the reason the plaintiff opened the subject of the industrial or first injury by introducing evidence in regard thereto. He cannot now complain of cross examination on the very matter he has introduced and which extends the evidence to show that compensation payments were made.
Vance, 253 Miss. at 755, 179 So.2d 1 (citations omitted). See also Crosby v. Keen, 200 Miss. 590, 593-94, 28 So.2d 322, 323 (1946) (quoting 31 C.J.S. Evidence, § 190) (“[tjhe party who first introduces improper evidence cannot object to the admission of evidence from the adverse party relating to the same matter. However, the admission of such evidence is not a matter of absolute right, but rests in the sound discretion of the court....”) (emphasis added). False testimony is always improper evidence.
¶ 18. In the case sub judice, the learned circuit judge conducted a very thorough analysis regarding Mitchell’s testimony, its putative prejudicial effect upon Robinson Property, and the applicable law. The circuit judge found that, although Mitchell had testified about medical bills, she also had testified about nonmedical expenses. He concluded that he could not “say with confidence that the plaintiff was attributing her financial difficulties directly to her medical bills.” As such, the circuit court “did not believe the plaintiffs comment was unduly prejudicial toward the defendant.” Additionally, the circuit judge expressed some uncertainty following his analysis of the caselaw on whether to allow impeachment of Mitchell, “find[ing] [him-jself without clear guidance.”[3] If Busick’s *247 failure to overrule prior contrary holdings created any uncertainty, today’s decision should make it clear that a witness may, under very limited circumstances, be cross-examined on collateral-source payments. Each case involves a fact-specific inquiry. Under these particular facts, this Court concludes that the circuit court correctly applied the law when it refused to admit evidence of Mitchell’s health insurance and Medicare coverage.
II. Whether the circuit court abused its discretion in failing to grant Robinson Property’s motion for new trial.
¶ 19. This Court reviews the denial of a motion for new trial for abuse of discretion. See Poole v. Avara, 908 So.2d 716, 726 (Miss.2005). This Court “will not set aside a jury’s verdict and order a new trial unless we are convinced that the verdict was contrary to the substantial weight of the evidence so that justice requires that a new trial be granted.” Id. at 727 (citing Jesco, Inc. v. Whitehead, 451 So.2d 706, 714 (Miss.1984) (Robertson, J., specially concurring)).
¶20. In considering a motion for new trial, this Court has set forth the following list of factors that a trial court should weigh and consider:
(1) Has the search for the true facts proceeded as far as it reasonably may under the peculiar facts and circumstances of the case?
(2) To what extent would it be unfair to the party in whose favor the verdict was returned in effect to give that party’s adversary a second bite at the apple?
(3) Considering the evidence, is there a substantial basis for believing that the jury disregarded their oaths and failed to follow the instructions of the Court in reaching its verdict? Put another way, is it substantially apparent that the jury’s verdict is the product of passion, prejudice or any other arbitrary factor?
(4) Assuming arguendo that the verdict is unjust (by reference to the underlying facts of the transaction or occurrence, the complete truth of which we will never know), what is the impact of that “injustice” upon the party against whom the verdict has been returned?
(5) If .a new trial is ordered, will the party in whose favor the verdict has been returned be deprived of some fair advantage he enjoyed in the first trial?
(6) Are there any other factors present, peculiar to the particular case or the parties, that would render just or unjust the grant or denial of a new trial?
Janssen Pharmaceutica, Inc. v. Bailey, 878 So.2d 31, 60-61 (Miss.2004) (citing Jesco, Inc., 451 So.2d at 715-16).
¶ 21. Robinson Property argues that the circuit judge failed to weigh these factors as a whole. Primarily, it asserts that, by refusing to admit the evidence of Mitchell’s insurance coverage, the circuit court did not permit the “true facts” to proceed as far as reasonably necessary. See id.
¶ 22. The circuit judge entered a thorough order denying Robinson Property’s motion for new trial. After examining the relevant caselaw and noting the lack of clear guidance, the circuit judge acknowledged that he could not state with confidence that he was correct in refusing to admit the proposed impeachment evidence.[4] But he added that even if he had *248 erred, a new trial was not required. He found that Mitchell’s credibility was substantially impeached by Robinson Property’s “vigorous attack” surrounding the “debacle involving the errant $10,000 [in] medical expenses appearing in the plaintiffs medical expense summary.... ” He also was of the opinion that the size of the verdict compared to the requested medical expenses suggested that Mitchell’s credibility had been called into question.
¶ 28. This Court finds that the circuit court did not abuse its discretion in denying a new trial.
CONCLUSION
f 24. The circuit court did not err in excluding evidence of Mitchell’s insurance payments, nor did it abuse its discretion in denying a new trial. Therefore, this Court affirms the Circuit Court of Tunica County’s final judgment and denial of Robinson Property’s motion for new trial.
¶ 25. AFFIRMED.
WALLER, C.J., CARLSON, P.J., DICKINSON, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY. DICKINSON, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY CARLSON, P.J., RANDOLPH AND LAMAR, JJ. KITCHENS, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED IN PART BY WALLER, C.J.

. At post-trial motion hearings, Mitchell’s counsel explained that his office had flooded just prior to trial, and in his haste to obtain replacement copies of Mitchell's medical bills, he inadvertently included the entire bill from the Sutherland Clinic.

. Justice Kitchens’s lack of confidence in our trial judges to control the admission of evidence and fears of their "heap[ing] heretofore forbidden evidence” into trial (Concurring-In-Result-Only Opinion at ¶ 39), is misplaced. Our system of justice is dependent upon trial judges properly applying evidentiary rules.

. Specifically, the circuit judge stated, "[h]is-torical precedence suggests] that there is no *247 impeachment exception to the collateral source rule. However, more recent cases contain language seemingly suggesting that evidence introduced for purposes other than to reduce the monetary award for the plaintiff, such as impeachment, is properly admitted.”

. See footnote 3 supra.