IRVING, J.,
 

 for the Court:
 

 ¶ 1. On June 10, 2009, Paul Terrell Walker Jr. was convicted of fondling a child for the purpose of gratifying his lust. The Scott County Circuit Court sentenced Walker to ten years in the custody of the Mississippi Department of Corrections. Walker filed a motion for a new trial on June 19, 2009, which the circuit court denied. Feeling aggrieved, Walker appeals and argues that: (1) the jury’s verdict is against the overwhelming weight of evidence, (2) the circuit court erred in refusing to admit the school nurse’s reports, and (3) he received ineffective assistance of counsel.
 

 ¶ 2. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 3. Walker began working as a school-bus driver for the Scott County School District in August 2005. Karen,
 
 [1]
 
 a twelve-
 
 *214
 
 year-old, rode the bus driven by Walker, a thirty-five-year-old. During the spring of 2007, Walker allegedly fondled Karen, touching her breast and vaginal area. Walker allegedly abused Karen during his afternoon bus route. Karen’s street was at the end of Walker’s route, and Karen was the last child Walker dropped off. Walker allegedly fondled Karen at the end of the dead-end street before turning the bus around and dropping off Karen.
 

 ¶4. Karen had previously accused her stepfather, Thomas Clark, of sexually abusing her. On April 10, 2007, Karen told her school’s janitor that her stepfather was “trying to mess with her.” The janitor referred Karen to the school nurse, Shirley Watson. Watson interviewed Karen, who alleged that Thomas had squeezed her buttocks and breasts. Watson reported the incident to the Mississippi Department of Human Services (DHS) and Rita Clark, Karen’s mother.
 

 ¶ 5. DHS launched an investigation into Karen’s allegations of abuse against Thomas and determined that the allegations were unsubstantiated. Karen admitted in her testimony that she had falsely accused her stepfather of sexual abuse.
 

 ¶ 6. During a subsequent meeting with DHS, the Clarks expressed concern regarding Karen’s interaction with Walker. Rita and Thomas had previously dealt with Walker through their business, Quick Star.
 
 [2]
 
 The Clarks told the social worker that they had received a telephone call from an unknown caller who claimed to have received a call from their home telephone at 1:30 a.m. Rita decided to investigate the matter further by checking her cellular-telephone records. She found a telephone number similar to the number of the man who had called their home, and when she called it, Walker answered. Rita confronted Karen about the calls, and Karen admitted that she had been using the cellular telephone to contact Walker.
 

 ¶ 7. The same day, Rita found a handwritten letter in Karen’s pants pocket. Karen claimed that Walker had given her the letter. The letter was neither addressed to Karen nor was it signed by Walker.
 
 [3]
 
 The Clarks showed the letter to the social worker during the meeting, and she advised them to contact the police.
 

 ¶ 8. Karen testified that she began calling Walker during the 2006-2007 school year. She testified that she called Walker every night, that she considered him her boyfriend, and that he had told her that he loved her. Karen testified that Walker began rubbing her outside of her clothes while the bus was stopped at the end of her street. Karen testified that Walker also put his hands under her shirt and inside her underwear. Karen testified that the abuse lasted a minute or two and occurred “a bunch of times.”
 

 ¶ 9. Ryan Clark, Karen’s uncle and a high-school student, rode the bus with
 
 *215
 
 Karen. Ryan lived next door to Karen, and he and Karen were the last two children dropped off in the afternoon. Ryan testified that he did not ride the bus every afternoon and that on the days that he did not ride the bus, he witnessed Walker hug Karen as she exited the bus near his home. He testified that the hugging occurred a “couple of times a week.” Karen’s grandmother, Leslie Clark, also testified that she witnessed Karen and Walker hug as Karen exited the bus.
 

 ¶ 10. Walker testified that the letter found in Karen’s pants pocket was intended for his wife. He testified that he had copied the contents of the letter from a card and placed the letter in a folding file he kept on the bus. Walker testified that he did not give the letter to Karen.
 

 ¶ 11. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 1. Weight of the Evidence
 

 ¶ 12. Walker argues that the jury’s verdict is against the overwhelming weight of the evidence and that the circuit court erred in denying his motion for a new trial. “The standard of review of a post-trial motion is abuse of discretion.”
 
 Withers v. State,
 
 907 So.2d 342, 352 (¶ 31) (Miss.2005) (quoting
 
 Flowers v. State,
 
 601 So.2d 828, 833 (Miss.1992)). When reviewing a circuit court’s decision to deny a motion for a new trial, the evidence is considered “in the light most favorable to the verdict.”
 
 Williams v. State,
 
 35 So.3d 480, 491 (¶ 41) (Miss.2010) (citing Bush
 
 v. State,
 
 895 So.2d 836, 844 (¶18) (Miss.2005)). Therefore, we will only order a new trial where the verdict “is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction unconscionable injustice.”
 
 Id.
 
 (quoting
 
 Bush,
 
 895 So.2d at 844 (¶ 18)).
 

 ¶ 13. Walker- argues that Karen’s prior false accusations of sexual abuse against her stepfather cast doubt on her credibility and create a reasonable doubt as to whether Walker committed the crime. Our case law is clear that “the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence.”
 
 Miley v. State,
 
 935 So.2d 998, 1001 (¶ 10) (Miss.2006) (citations omitted). Here, Walker attempts to attack Karen’s credibility by pointing out her prior false accusations of sexual abuse against her stepfather. We do not find that Karen’s testimony was sufficiently discredited to warrant overruling the verdict, especially considering the letter written by Walker which was found in Karen’s pants pocket and the testimonies of Ryan and Leslie who frequently observed Karen and Walker hug as Karen exited the bus. Furthermore, “the jury is the final arbiter of a witness’s credibility.”
 
 Duncan v. State,
 
 939 So.2d 772, 783 (¶40) (Miss.2006) (citing
 
 Morgan v. State,
 
 681 So.2d 82, 93 (Miss.1996)). The jury was fully capable of taking Karen’s prior false accusation of sexual abuse into account when assessing her credibility. The jury found Karen’s testimony, as well as that of many others, more credible than Walker’s testimony. We find that Walker’s conviction is not contrary to the overwhelming weight of the evidence; therefore, the circuit court did not abuse its discretion in denying his motion for a new trial. This issue lacks merit.
 

 2. Exclusion of School Nurse’s Reports
 

 ¶ 14. Walker argues that the circuit court erred in refusing to admit the reports that the school nurse made follow
 
 *216
 
 ing her interview with Karen regarding the allegations of abuse against Thomas. The standard of review applied to a trial court’s decision to admit or deny evidence is abuse of discretion.
 
 Robinson Prop. Group, L.P. v. Mitchell,
 
 7 So.3d 240, 243 (¶ 9) (Miss.2009). However, we will not reverse a trial court’s decision “unless the error adversely affects a substantial right of a party.”
 
 Id.
 
 (quoting
 
 Whitten v. Cox,
 
 799 So.2d 1, 13 (¶ 27) (Miss.2000)).
 

 ¶ 15. Walker argues that the school nurse’s reports should have been admitted under the medical-diagnosis or treatment exception to the hearsay rule. Rule 803(4) of the Mississippi Rules of Evidence provides that the following statements are exempted from the hearsay rale:
 

 Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness. For purposes of this rule, the term “medical” refers to emotional and mental health as well as physical health.
 

 Alternatively, Walker argues that the school nurse’s reports are admissible under Rule 803(6) of the Mississippi Rules of Evidence. Rule 803(6) provides for the admission of records of regularly conducted business activity as follows:
 

 A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or self-authenticated pursuant to Rule 902(11), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.
 

 ¶ 16. Arguably, either exception is broad enough to encompass the reports compiled by the school nurse following her interview with Karen. However, we do not find that the circuit court abused its discretion in excluding the reports because they related to Karen’s accusations against her stepfather, not Walker. Furthermore, the circuit court’s decision to exclude the reports did not prejudice or adversely affect Walker, especially since the circuit court permitted the school nurse to testify regarding her interview with Karen. This issue is without merit.
 

 3. Ineffective Assistance of Counsel
 

 ¶ 17. Finally, Walker argues that his attorney’s failure to request a peremptory instruction constituted ineffective assistance of counsel. To succeed in a challenge to the effectiveness of counsel, Walker must prove that his counsel was deficient and that this deficiency prejudiced him.
 
 Doss v. State,
 
 19 So.3d 690, 694-95 (¶ 7) (Miss.2009) (citing
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Both prongs must be pleaded with specific detail.
 
 Coleman v. State,
 
 749 So.2d 1003, 1012 (¶26) (Miss.1999).
 

 ¶ 18. The Mississippi Supreme Court has held that the failure to ask for a peremptory instruction, move for a directed verdict, or make any post-trial motions constitutes ineffective assistance of coun
 
 *217
 
 sel.
 
 Holland v. State,
 
 656 So.2d 1192, 1197-98 (Miss.1995). However, the supreme court later clarified its holding in
 
 Holland
 
 and noted:
 

 In
 
 Holland,
 
 this Court was concerned with the fact that trial counsel had completely failed to give the trial court the opportunity to review the sufficiency of the evidence at the end of the trial. Not only did counsel fail to renew his motion for [a] directed verdict at the close of all proof, he
 
 did not present the trial court with any post-trial motions.
 

 Simon v. State,
 
 857 So.2d 668, 690 (¶ 55) (Miss.2003) (emphasis added).
 

 ¶ 19. In
 
 Simon,
 
 trial counsel moved for a directed verdict at the close of the State’s case-in-chief, but he failed to renew his motion for a directed verdict at the close of all proof.
 
 Id.
 
 at (¶ 54). Trial counsel did file post-trial motions, specifically a motion for a judgment notwithstanding verdict or a new trial, which gave the trial court the opportunity to review the legal sufficiency and weight of the evidence.
 
 Id.
 
 at (¶ 56). Therefore, the
 
 Simon
 
 court reasoned that trial counsel’s failure to renew his motion for a directed verdict did not constitute ineffective assistance of counsel.
 
 Id.
 

 ¶ 20. At the close of the State’s case-in-chief, Walker’s attorney made a motion to dismiss, citing the State’s failure to prove its case. Additionally, Walker’s attorney filed a motion for a new trial. The post-trial motion gave the circuit court the opportunity to review the weight of the evidence; therefore, the attorney’s failure to ask for a peremptory instruction does not constitute ineffective assistance of counsel. Because Walker has failed to prove that his counsel was deficient, he has not satisfied the first prong of
 
 Strickland,
 
 and his ineffective assistance of counsel claim must fail.
 

 ¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY OF CONVICTION OF GRATIFICATION OF LUST AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.
 

 [1]
 

 . To protect the privacy of the minor victim and her family, the names of the victim and her relatives have been changed.
 

 [2]
 

 . Quick Star is a direct-sales business, where owners sell household products and other consumer goods.
 

 [3]
 

 . The contents of the letter are as follows:
 

 Do you know how important you are to me? I know you probably wonder from time to time what you mean to me.
 

 So I’d like to share this thought with you, to tell you that you mean the world to me ... [-1
 

 Do you know how important you are to me?
 

 Think of something you couldn't live without and multiply it by a hundred. Think of what happiness mean [sic] to you and add it to the feelings you get on the best days you've ever had[.]
 

 Add up all your best feelings and take away all the rest and what you’re left with is exactly how I feel about you.
 

 You matter more to me than you can imagine and much more than I'll ever be able to explain.
 

 Love, S.O.S.