# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01122-COA

| | |
|---|---|
| TALLULAH A. REDDING, SHARON L. ANDERSON AND ARTHUR WAYNE ANDERSON, JR. | APPELLANTS |

v.

| | |
|---|---|
| MISSISSIPPI TRANSPORTATION COMMISSION | APPELLEE |

| | |
|---|---|
| DATE OF JUDGMENT: | 04/16/2013 |
| TRIAL JUDGE: | HON. ALLEN B. COUCH JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEYS FOR APPELLANTS: | PAUL R. SCOTT<br>ROBERT E. QUIMBY |
| ATTORNEYS FOR APPELLEE: | RICHARD G. NOBLE<br>HOLLAMAN MARTIN RANEY |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| TRIAL COURT DISPOSITION: | JURY AWARDED APPELLANTS $1,709,197 IN DAMAGES AND COMPENSATION |
| DISPOSITION: | REVERSED AND REMANDED: 11/25/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    This is the appeal of a jury verdict in an eminent-domain action. The Mississippi Transportation Commission ("MTC") sought to acquire certain property owned by Tallulah Redding, Sharon Anderson, and Arthur Anderson (the "landowners"). The landowners were awarded $1,709,197 in compensation and damages a result of the taking of their property. On appeal, the landowners argued that the trial court erred when it excluded an earlier

appraisal of the property. Finding reversible error, we remand for a new trial.

FACTS

¶2.    The MTC sought to locate, relocate, construct or reconstruct a segment of State Road 304/I-269 from I-55 to State Road 305 in DeSoto County, Mississippi. More specifically, the MTC sought to acquire 81.28 acres from a parcel of 436.19 acres that were owned by the landowners. The MTC initiated negotiations with the landowners but were unable to come to an agreement.

¶3.    On August 3, 2010, the MTC commenced this eminent-domain action. The MTC sought to acquire property and asked for an order granting the right of immediate title and possession. On September 10, 2010, the court entered an order granting the MTC the right to immediate title and possession of the property. On October 5, 2010, the MTC filed a statement of values that represented the value of the property to be condemned at $1,370,975.

¶4.    The central issue in this appeal is the pre-negotiation appraisal report prepared for the MTC, which was required by Mississippi Code Annotated section 43-37-3. On February 8, 2011, the court ordered the production of the pre-negotiation appraisal report. On May 9, 2011, the MTC filed a motion in limine that asked the court:

> to enter an order ordering and directing the attorney for the [landowners] to refrain from mentioning, stating or suggesting in the presence of the jury or prospective jurors [prior] to or during the trial of this case, either through the examination of witnesses, offer of evidence, arguments, statements or otherwise anything with reference to an offer of compromise and settlement made to [the landowners] prior to the filing date of August 3, 2010, said offer of compromise having been mandated by Section 43-37-3, Miss. Code. Ann., 1972.

The motion argued that the pre-negotiation appraisal report would be "highly prejudicial and

2

violates Mississippi Rule of Evidence 408." The landowners filed a response and the MTC filed a "supplement." On June 24, 2011, the court denied the motion in limine.

¶5. On July 6, 2011, the MTC sought to appeal the court's decision and filed a petition for permission for interlocutory appeal with the Mississippi Supreme Court. By order dated July 12, 2011, the petition was denied.

¶6. The trial was scheduled to begin on March 21, 2012. The day before, on March 20, the MTC filed another motion in limine that asked the court to exclude the pre-negotiation appraisal report. On April 25, 2012, the court entered a "Limine Order" that granted the earlier motion in limine and ruled that the pre-negotiation appraisal report was inadmissible. The landowners filed a motion to reconsider, and it was denied.

¶7. The jury trial was held from April 9 through April 11, 2013. William Milton, the MTC's appraiser, testified that the property's appraised value was $1,370,975. His pre-negotiation appraisal report, which was excluded, appraised the property at $1,912,125. The landowners' expert appraiser, Rip Walker, testified that the just compensation due to the owners was $3,700,000. The jury returned a verdict of $1,709,197. The landowners timely filed a motion for a judgment notwithstanding the verdict, additur, or new trial, and it was denied. Their appeal has been deflected to this Court.

DISCUSSION

¶8. The landowners' appeal challenges the trial court's decision to exclude the pre-negotiation appraisal report. They claim that Mississippi law provides that the landowners are entitled to use the condemning authority's original, highly relevant appraisal for impeachment purposes when a condemning agency's opinion of just compensation at trial

3

is lower than its previous opinion. They cite *Morely v. Jackson Redevelopment Authority*, 632 So. 2d 1284 (Miss. 1994). Further, they claim the jury heard about how the downturn in the economy impacted Milton's valuation. However, the jury did not hear that Milton had already taken the downturn into account when he made his first appraisal. They claim that this was a critical fact the jury should know, especially considering Milton's first appraisal calculated just compensation due to the landowners to be $541,150 higher than his testimony in court.

¶9.     We begin with a close and careful look at the trial court's decision. The trial court's April 25, 2012 "Limine Order" held:

> This matter came on for jury trial on March 21, 2012. At the onset of the proceedings, [the MTC] made a motion in limine to exclude [the landowners]' use of any MTC appraisals performed prior to the established date of taking in this matter, August 3, 2010. Prior to the appraiser's testimony, the Court sustained [the MTC]'s motion without comment and advised that a written opinion would follow. Before [the landowners]' cross-examination of the [MTC]'s appraiser, the Court declared a mistrial for an unrelated reason.
>
> At issue is what has been commonly referred to as "pre-negotiation" and "review" appraisals prepared by [the MTC]'s appraiser, William Milton. As required by Mississippi Code Annotated § 43-37-3, MTC obtained an appraisal of the subject property as a basis for making an offer to the landowners. Based on the initial appraisal, an offer was made to and rejected by the landowners sometime in 2008. MTC then filed suit to condemn the property on August 3, 2010. Mr. Milton performed an appraisal at that time which MTC submitted as its Statement of Value in this case. The 2010 appraisal is significantly lower than MTC's 2008 appraisal and offer.
>
> [The landowners] seek to impeach Milton with those prior appraisals. Initially, this Court agreed with [the landowners]' position and allowed the use of the appraisals for impeachment purposes only. [The MTC] sought, and [was] denied, an interlocutory appeal to the Mississippi Supreme Court. The original trial date was continued to March, 2012. However, prior to the March trial, the Court announced to the parties that it was revisiting its prior decision, sua sponte, and invited the parties to submit additional filings.

4

The court then analyzed *Morely v. Jackson Redevelopment Authority*, 632 So. 2d 1284 (Miss. 1994), and *United States v. 320.0 Acres of Land*, 605 F.2d 762 (5th Cir. 1979). The court concluded:

> However, much is lacking in the factual development of those cases to apply them to the instant case. Both cases fail to provide the "how" and "why" the condemning agency lowered their statement of values. The focus is on the application of MRE and FRE 408's prohibition against introducing offers of settlement.
>
> This Court's ruling[,] however, hinges on MRE 403[,] which states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
>
> Expert real estate appraisers for both parties operate under the mandate of Mississippi Code Annotated § 11-27-19[,] which states in relevant part: "Evidence of fair market value shall be established as of the date of the filing of the complaint." To allow the [landowners] to impeach [the MTC]'s appraiser with old appraisal data performed a year and a half before the date of the filing of the complaint and introduce a value that was assigned well before the filing could be highly prejudicial to the [MTC]. Any probative value would be outweighed by that prejudicial effect.
>
> [The MTC]'s appraisals are based on new comparable sales and purport to reflect the changed landscape of real estate values in 2010 as opposed to values in 2008. While the [MTC] could explain the change in value, the evidence of a prior assignment of value would be before the jury and would have the potential to cause confusion or prejudice.
>
> Accordingly, [the MTC]'s Motion in Limine filed March 20, 2012 is granted. [The landowners] are prohibited from introducing or referring to the pre-negotiation appraisal reports prepared by MTC.

¶10. In *Robinson Property Group, L.P., v. Mitchell*, 7 So. 3d 240, 243 (¶9) (Miss. 2009), the supreme court held that "the appellate court reviews a trial judge's decision to admit or deny evidence under an abuse-of-discretion standard. If an error involves the admission or

exclusion of evidence, this Court will not reverse unless the error adversely affects a substantial right of a party." (Internal citations and quotations omitted).

¶11.    Although the trial court appears to reject the legal principles in *Morely* and *320 Acres of Land*, we believe these cases cannot be ignored.  In *Morely*, the Jackson Redevelopment Authority obtained two appraisals.  *Morely*, 632 So. 2d at 1287.  The first appraisal concluded the property's value was $375,500, and the second valued it at $865,000.  *Id.*  The landowners rejected an offer of $865,000 based upon the higher appraisal. *Id.*  At trial, the JRA sought to preclude any reference to the higher appraisal on the grounds that the higher offer was an offer to settle or compromise a disputed claim, and therefore, it was excluded under Mississippi Rule of Evidence 408.  *Id.* at 1291.  The supreme court rejected this argument.  The court cited Rule 408: "'This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations.'"  *Id.* at 1291-92.  The court reasoned that, because the offer based upon the higher appraisal was extended before the petition was filed, no disputed claim existed for Rule 408 purposes.  *Id.* at 1292.

¶12.    The court also held that, because the statement of fair market value was mandated by law (as is the case here), the policy reason behind Rule 408 did not apply; "[a]llowing the statements into evidence would not discourage settlement of disputed claims since the statement still had to be made by law."  *Id.* (citing *320 Acres of Land*, 605 F.2d at 824-25. To withhold from the jury the higher offer would "improperly prevent[] the owners from entering into evidence or using as impeachment the highly relevant appraisal . . . ."  *Id.*

¶13.    In the Fifth Circuit decision in *320 Acres of Land*, the government obtained pre-filing

6

appraisals and extended offers of $80,000 and $20,000 to two of the affected property owners. *320 Acres of Land*, 605 F.2d at 823-24. At trial, the government's expert appraiser testified that the fair market value of the properties was $64,000 and $12,000, respectively. *Id.* at 824. The court held that Federal Rule of Evidence 408 was not applicable to the original statements of value and statements of compensation are admissible at a subsequent compensation trial, as an admission, once it becomes known at trial the government is attempting to value the property at a lower figure. *Id.* at 825.

¶14.   The Fifth Circuit explained:

> First, unlike offers of compromise, there is no possibility that these statements are motivated by a desire to buy peace, irrespective of the merits. To repeat, the statements represent the bottom line sum which the Government believes the landowner is constitutionally entitled to. Second, there is no significant danger that admission of such statements will deter the negotiated acquisition of private lands. Insofar as the statements do represent the Government's appraised estimate of fair market value and just compensation they represent what the Government believes it will have to pay in any event [a]fter incurring the costs of a condemnation proceeding. Governmental desire to avoid these costs should be sufficient incentive to attempt a negotiated and voluntary sale of the property, regardless of the admissibility of statements. Finally, we point out that among the express purposes with which Congress enacted [§] 4651 were "to assure consistent treatment of owners" and "to promote public confidence in Federal land acquisition practices." . . . As the law of admissions is really the law of agency, not evidence, one can hardly imagine a statement more fitting the definition than this a statement made by one acting within his authority asserting a position contrary to the one asserted at trial.

*Id.* Thus, the Fifth Circuit concluded that "the Government is not completely free to play fast and loose with landowners telling them one thing in the office and something else in the courtroom."

¶15.   This case is analogous to *Morely* and *320 Acres of Land*. However, the trial court concluded that "much is lacking in the factual development of those cases [*Morely* and *320*

7

*Acres of Land*] to apply them to the instant case. Both cases fail to provide the 'how' and 'why' the condemning agency lowered their statement of values." We find that the trial court was in error. These cases provide that the primary purpose to allow the admission of the earlier appraisal is for impeachment. Here, the MTC will certainly be allowed to explain the "how" and "why" to the jury. The jury can then reject it or accept it. The jury's result will then be based on all relevant evidence.

¶16. Unfortunately, our discussion does not end here. The trial court explained that its "ruling . . . hinges on MRE 403[,] which states, 'Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" The trial court then explained:

> Expert real estate appraisers for both parties operate under the mandate of Mississippi Code Annotated § 11-27-19[,] which states in relevant part: "Evidence of fair market value shall be established as of the date of the filing of the complaint." To allow the [landowners] to impeach [the MTC]'s appraiser with old appraisal data performed a year and a half before the date of the filing of the complaint and introduce a value that was assigned well before the filing could be highly prejudicial to the Plaintiff. Any probative value would be outweighed by that prejudicial effect.

> [The MTC's] appraisals are based on new comparable sales and purport to reflect the changed landscape of real estate values in 2010 as opposed to values in 2008. While the [MTC] could explain the change in value, the evidence of a prior assignment of value would be before the jury and would have the potential to cause confusion or prejudice.

¶17. The trial judge erred in his application of Rule 403 when he stated the concern that the old appraisal would be "highly prejudical" to the MTC and "any probative value would be outweighed by that prejudicial effect. This is an erroneous application of Rule 403.

8

¶18.    Mississippi Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided . . . by these rules.  Evidence which is not relevant is not admissible."  There is no question that the prior appraisal is relevant and admissible under Rule 402.  We then turn to the Rule 403 filter, which provides that "evidence *may be excluded* if its probative value is *substantially outweighed* by the danger of unfair prejudice[.]" M.R.E. 403 (emphasis added).  This Court recognizes that almost all admissible evidence is, or at least should be, prejudicial to the opposing party.  If evidence is not prejudicial, the trial court may want to ask why is it being offered for admission.

¶19.    The Rule 403 filter allows relevant (i.e., probative) evidence to be excluded only if its "probative value is *substantially outweighed* by the danger of unfair prejudice." (Emphasis added).  Here, the trial court did not find that the probative value of the pre-negotiation appraisal report was "substantially" outweighed.  This is important.

¶20.    Further, as to the second paragraph of the trial court's opinion cited above, that is exactly the purpose of impeachment.  The MTC's expert witness may be able to explain that the more recent appraisals were based on new comparable sales and reflected "the changed landscape of real estate values in 2010 as opposed to values in 2008."  If so, the jury will have all "relevant evidence" before it and could certainly then determine which valuation to accept.  Again, the prior appraisal is not inadmissible because it "would have the potential to cause confusion or prejudice."  The Rule 403 test is not simply that it would cause "confusion or prejudice"; instead, the "danger of unfair prejudice [or] confusion of the issues" *must* "substantially outweigh" the probative value of the evidence.

¶21.    Finally, we recognize that "Mississippi allows wide-open cross-examination of any

9

matter that is relevant . . . ." *Anthony v. State*, 108 So. 3d 394, 397 (¶6) (Miss. 2013). In

*Robinson Property Group*, Justice Randolph, writing for the court, clearly analyzed the

proper procedure for the trial court:

> Rule 607 provides that "[t]he credibility of a witness may be attacked by any party . . . ." Miss. R. Evid. 607. Therefore, an attack upon the credibility of a witness through the impeachment of false or misleading testimony is permissible. However, any evidence to be admitted under Rule 607 must always first be deemed relevant, see Mississippi Rule[s] of Evidence 401–402, and then filtered through Rule 403.

*Robinson Prop. Gp.*, 7 So. 3d at 245 (¶15). Here, the landowners are allowed to impeach the

MTC's expert witness appraiser with his prior appraisal. *See* M.R.E. 607. The prior

appraisal was certainly relevant evidence. *See* M.R.E. 401-402.

¶22. We review the trial judge's decision to exclude evidence under an abuse-of-discretion

standard. Here, we find that the trial court was in error in the decision to exclude the pre-

negotiation appraisal report. We cannot reverse this case, however, unless we find that "the

error adversely affects a substantial right of a party." *Robinson Prop. Gp.*, 7 So. 3d at 243

(¶9). Therefore, we also find that the exclusion of this evidence was an error that adversely

affected a substantial right of the landowners. As a result, we reverse the trial court's

decision to grant the motion in limine and exclude the pre-negotiation appraisal report. We

also remand this case for a new trial consistent with this opinon.

¶23. **THE JUDGMENT OF THE DESOTO COUNTY SPECIAL COURT OF EMINENT DOMAIN IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J.**

10

**JAMES, J., DISSENTING:**

¶24. I respectfully dissent from the majority opinion. Mississippi Rule of Evidence 403 states: "Although relevant, evidence maybe excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶25. The trial court has broad discretion to determine what evidence is admissible under Rule 403. *Batiste v. State,* 121 So. 3d 808, 863 (¶143) (Miss. 2013). We have previously held that "[w]here a trial court determines that potentially prejudicial evidence possesses significant probative value, it is within that court's sound discretion whether or not to admit such evidence[.]" *Jenkins v. State,* 75 So. 3d 49, 54 (¶15) (Miss. Ct. App. 2011). We have further stated that "we do not 'engage anew in the [Rule] 403 balancing process.' Our review is limited to determining 'whether the trial court abused its discretion in weighing the factors and admitting or excluding the evidence." *Griffin v. McKenney,* 877 So. 2d 425, 438 (¶43) (Miss. Ct. App. 2003). The majority opinion states that the trial court did not find that the probative value was "substantially outweighed" by prejudice. However, the trial court held:

> To allow the Defendants to impeach Plaintiff's appraiser with old appraisal data performed a year and a half before the date of the filing of the complaint and introduce a value that was assigned well before the filing could be highly prejudicial to the Plaintiff. Any probative value would be outweighed by that prejudicial effect.

¶26. The initial appraisal report indicated that its effective date was February 2, 2009, and MTC filed its complaint on August 3, 2010, well after the effective date. In the interim,

11

MTC and the landowners attempted to reach a settlement through negotiations; the first appraisal for $1,912,125 was the first offer by MTC to the landowners. After going through the ebb and flow of settlement negotiation without reaching an agreement, MTC filed suit to commence eminent-domain proceedings. The fair market value is determined at the time of the taking, which is initiated by the filing of the complaint. *Williamson v. Lowndes Cnty,.* 723 So. 2d 1231, 1232 (¶3) (Miss. Ct. App. 1998). This Court has further stated that "[e]vidence of value must, by statute, relate to a particular point in time – namely, the date of filing of the complaint commencing the acquisition process." *Id.*

¶27.    Further, "[w]hen a portion of a larger tract of land is taken for public use, the owner is entitled to be awarded the difference between the fair market value of the entire tract immediately before the taking and the fair market value of the remaining tract immediately after the taking." *Miss. Transp. Comm'n v. Fires,* 693 So. 2d 917, 920 (Miss. 1997). A significant period of time passed between the first appraisal and the filing of the complaint, and it is reasonable to conclude that the February 2009 appraisal was not "immediately" before the taking.

¶28.    The landowners argue that the current case law supports the admissibility of the initial appraisal report completed in February 2009. The landowners also contend that cases from several jurisdictions, including the United States Court of Appeals for the Fifth Circuit, support the admission of the appraisal report. The exclusion of the report, the landowners assert, created a mechanism that the State could use to "strong arm" property owners. The landowners also suggest that the exclusion of the report also "hindered the intent and purpose" of the real-property-acquisition laws.

12

¶29. Mississippi Code Annotated section 43-37-3(1) (Supp. 2014) states:

(a) Every reasonable effort shall be made to acquire expeditiously real property by negotiation.

(b) Real property shall be appraised before the initiation of negotiations, except that the acquiring person, agency or other entity may adopt a procedure in compliance with federal regulations to waive the appraisal in cases involving the acquisition by sale or donation of property with a low fair market value.

. . . .

(h) If an interest in real property is to be acquired by exercise of power of eminent domain, formal condemnation proceedings shall be instituted. The acquiring authority shall not intentionally make it necessary for an owner to institute legal proceedings to prove the fact of the taking of his real property.

¶30. It is apparent from the record that MTC fulfilled its statutory obligations throughout the course of litigation. MTC used Milton's initial appraisal as a starting point for entering negotiations, which the landowners rejected. Once negotiations failed, MTC followed proper procedure and filed a complaint to commence eminent-domain proceedings. There is no evidence of "coercive tactics" used during litigation.

¶31. The landowners argue that the exclusion of the appriasal report contradicts the "intent and purpose" of real-property-acquisition law. The Mississippi Supreme Court has held that when interpreting a statute:

[T]he first question a court should decide is whether the statute is ambiguous. If it is not ambiguous, the court should simply apply the statute according to its plain meaning and should not use principles of statutory construction. Whether the statute is ambiguous or not, the ultimate goal of this Court is to discern and give effect to the legislative intent.

*Miss. Dep't. of Transp. v. Allred,* 928 So. 2d 152, 154 (¶12) (Miss. 2006). Section 43-37-3 is unambiguous and clearly enumerates the process of a taking under the statute. MTC did

13

not deviate from this procedure during litigation.

¶32. One of the primary cases relied upon by the landowners is *Morely v. Jackson Redevelopment Authority.*, 632 So. 2d 1284 (Miss. 1994). In *Morely,* the supreme court held that Rule 408 did not apply because a disputed claim did not arise until eminent-domain proceedings had begun. *Morely,* 632 So. 2d at 1292. Rule 408 declares evidence of compromise and offers to compromise inadmissible to "prove liability for or invalidity of the claim or its amount." M.R.E. 408. The supreme court further stated: "However, this does not dispose of the question of whether the appraisal on which the offer is based is inadmissible, since Rule 408 further provides that, '[t]his rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." *Morely,* 632 So. 2d at 1291-92. MTC argues, that the admission of the initial appraisal report would be in violation of Mississippi Rule of Evidence 408. Further, the court stated in *Morely:* "In combination with the restrictions placed on the owners' prospects for securing other expert testimony through its pre-trial order, this error became even more prejudicial to the owners." *Morely* 632 So. 2d at 1292. The exclusion of the higher appraisal in conjunction with other factors made the exclusion more prejudicial to the landowners. Here, however, no other restrictions were placed on the landowners.

¶33. The majority opinion asserts that *Morely* supports the position that the initial appraisal is admissible and does not "substantially outweigh" the prejudice of the appraisal. However, the trial court discussed the requirements of Rule 403 in detail and held that the appraisal is prejudicial and may cause confusion. Further, in *Morely,* a few months passed between the final appraisal and the filing of the complaint to commence eminent-domain proceedings.

14

This is in contrast to the present case. Here, eighteen months passed between the time the appraisal report took effect and when the complaint was filed. The trial court held that too much time passed between the initial appraisal and the filing of the complaint Also, there were two different appraisals performed by two different appraisers. In the case at bar, Milton performed both appraisals. . Due to the nature of fluctuations in property value and the economic climate at the time, it cannot be assumed that the fair market value would have been at or close to the same level at the time of the initial appraisal.

¶34.  The other case relied upon by the landowners is *United States v. 320.0 Acres of Land,* 605 F.2d 762 (5th Cir. 1979). In that case, land was secured for the Everglades National Park, and there were fifty-two tracts of land involved in the taking. *Id.* Also, comparable sales were excluded from evidence, which severely limited the landowners' ability to present evidence at trial. *Id.* at 772-73.

¶35.  As with *Morely,* the court in *320 Acres* highlighted several procedural flaws throughout the process. *Id.* In *320 Acres,* there is significant discussion about the scope-of-the-project rule and the highest-and-best-use rule. *Id* at 781. The trial court also excluded the landowners' demonstrative evidence portraying the property as something other than uninhabitable land. *Id.* at 825-26. There were multiple procedural flaws in both cases that made the exclusion of previous appraisals more prejudicial.

¶36.  The majority opinion also states that the exclusion of the prior appraisal adversely affected a substantial right of the landowners. However, the prior appraisal did not substantially affect the rights of the landowners because the appraisal was too remote in time. The supreme court has stated: "This Court has a long-standing history of not disturbing jury

15

verdicts in eminent domain proceedings[.]" *Trowbridge Partners v. Miss. Transp. Comm'n,* 954 So. 2d 935, 944 (¶24) (Miss. 2007). Therefore, I would affirm the decision of the trial court.

**IRVING, P.J., JOINS THIS OPINION.**