881 So.2d 340 (2004)
Ike KENNEDY and Edith Kennedy, Appellants
v.
Fred ANDERSON, Appellee.
No. 2003-CA-01112-COA.
Court of Appeals of Mississippi.
August 24, 2004.
*342 Rhett R. Russell, Tupelo, attorney for appellants.
Gary L. Carnathan, Tupelo, attorney for appellee.
EN BANC.
MYERS, J., for the Court.
¶ 1. This appeal involves an easement dispute between adjoining landowners. The dominant estate owner (Anderson) brought suit in the Lee County Chancery Court complaining that the servient estate owners (The Kennedys) prevented him from using an express access easement. The Kennedys filed a counterclaim alleging that Anderson's use of the easement damaged their property. After the hearing, the Kennedys' motion to dismiss was denied and the chancellor dismissed their counterclaim with prejudice. The chancellor also found that neither party was damaged and enjoined each party from interfering with the rights of the other. The chancellor found that a descriptive access easement was established as to Anderson. Finally, the chancellor assessed the Kennedys $1,000 in attorney fees payable to Anderson. Aggrieved by this decision, the Kennedys perfected the present appeal and raise the following issues for our review:
I. WHETHER THE TRIAL COURT ERRED IN AWARDING ANDERSON A DESCRIPTIVE ACCESS EASEMENT ACROSS THE KENNEDYS' PROPERTY SINCE THE CHAIN OF TITLE WAS INVALID
II. WHETHER THE TRIAL COURT ERRED IN FINDING THAT ANDERSON HAD STANDING TO INITIATE THE LITIGATION AT ISSUE
III. WHETHER THE TRIAL COURT ERRED IN FINDING THAT *343 ANDERSON HAD THE BURDEN OF REPAIRING AND MAINTAINING THE EASEMENT
IV. WHETHER THE TRIAL COURT ERRED IN FINDING THAT ANDERSON HAD A RIGHT TO PARK VEHICLES AND OTHERWISE TAKE DOMINANT POSSESSION OF THE EASEMENT
V. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE KENNEDYS HAD SUFFERED NO DAMAGES
VI. WHETHER THE TRIAL COURT ERRED IN ASSESSING ATTORNEY FEES AGAINST THE KENNEDYS
VII. WHETHER THE TRIAL COURT ERRED IN DISMISSING THE KENNEDYS' COUNTERCLAIM WITH PREJUDICE

STATEMENT OF FACTS
¶ 2. On July 14, 1997, Ike and Edith Kennedy purchased a piece of real property from Gloria Dallas located in Lee County, Mississippi. The Kennedys' deed stated:
ALSO: Subject to a 20 foot wide access easement being more particularly described as follows: Beginning at a point of beginning of the above description and run West 247.5 feet to paved county road; thence run North along the East side of said county road for 20.0 feet; thence run East for 267.5 feet; thence run South for 20.0 feet; thence run West for 20.0 feet to the point of beginning.
¶ 3. The Kennedys were aware that their property was subject to an express easement. The easement provided for ingress and egress from the county road to an adjacent piece of land known as the Beane property. Since the access easement was parallel and immediately adjacent to her actual driveway, Dallas allowed the owner of the Beane property to use her driveway instead of the easement. The Kennedys continued to allow this practice but soon encountered problems with a former owner of the Beane property, Charles Deloach.
¶ 4. The Kennedys claimed that Deloach was causing deep gullies in their driveway so they asked him to make the necessary repairs. After Deloach refused, the Kennedys informed him that he would have to use the easement to access his property. Thereafter, the Kennedys repaired their driveway, erected a fence, and constructed a drainage ditch. The fence ran parallel with the driveway and easement all the way up to the Beane property. The ditch ran parallel to the fence line.
¶ 5. In 2001, Anderson began to occupy the Beane property and resided there with his family in a mobile home. The Kennedys claim that the surface of the easement was in good condition when Anderson began to occupy the Beane property. The Kennedys informed Anderson that he was to use the easement instead of their driveway.
¶ 6. The area received a lot of rain and the easement became difficult to traverse. The Kennedys asked Anderson to fill the ruts and place gravel on the surface to prevent erosion but Anderson refused. Anderson claims that he was waiting until the summer to do the work.
¶ 7. Instead, Anderson asked the Kennedys to open the fence and allow him access to their driveway until the summer but they refused. Anderson drove a four-wheel drive truck and was able to navigate the easement. Anderson's wife, however, testified that she could not make it all the way to their mobile home without getting her vehicle stuck in the mud so she was forced to park on a somewhat stable portion of the easement and complete her *344 journey by foot. The Kennedys retaliated by placing no parking signs all along the easement but Anderson tore them down. The Kennedys also dug deep holes in the ground where Anderson's wife was parking.
¶ 8. Eventually, the condition of the easement became so bad that no one could use it. Anderson and his family were forced to park near the beginning of the easement at the foot of the county road and walk the entire length of the easement to their mobile home. The Kennedys dug a deep hole at least five feet in length to prevent the Andersons from parking there as well. The Kennedys claimed that this was done solely to prevent flooding. The Kennedys are also accused of barricading the Andersons' vehicles in the easement.
¶ 9. Anderson asked the Kennedys if he could repair the easement but they told him that he would have to submit a plan for approval. Anderson refused and ordered dirt and gravel from the county which was delivered on site. Anderson argued that he attempted to spread the dirt and gravel but Mr. Kennedy physically blocked him. Anderson also argued that Mr. Kennedy placed that same dirt and gravel directly behind the rear wheels of Anderson's wife's vehicle in an attempt to block her in. The Kennedys dispute this fact. They argue that he used the dirt from the holes he dug to construct "speed bumps." Again, the Kennedys contend that the sole purpose of this act was to alleviate flooding.
¶ 10. Unfortunately, the problems between these two neighbors did not end here. In fact, Anderson is accused of threatening Mr. Kennedy on two occasions, mooning Mr. Kennedy, playing loud music, poisoning the Kennedys' cedar trees, and damaging their fence. Not to be outdone, Anderson contends that Mr. Kennedy told him that he had nothing better to do with his time than to mess with Anderson. The record also reveals a picture taken by Anderson's wife that depicts Mr. Kennedy making an obscene gesture with his middle finger. At the hearing, Mr. Kennedy stated that he was merely waving. Anderson accused Mr. Kennedy of spotlighting his mobile home at night. In addition, Anderson contends that Mr. Kennedy pointed a rifle at him and his family. Mr. Kennedy stated that the weapon was a BB gun and that he was using it to kill a cat.
¶ 11. Anderson initiated this litigation by filing a complaint in the Lee County Chancery Court. Anderson argued that Kennedy voluntarily and without cause tried to prevent him from using the express access easement. Anderson argued that these actions caused damaged to his vehicles and sought $20,000 in actual damages as well as $20,000 in punitive damages.
¶ 12. The Kennedys filed a response denying Anderson's allegations and a counterclaim. The Kennedys argued that Anderson's use of the easement and refusal to repair it resulted in damage to their property. The Kennedys contend that Anderson damaged their fence. The Kennedys also contend that Anderson's decision to park his vehicles on the easement was an illegal attempt to take dominant possession of their property. The Kennedys asked for the complaint against them to be dismissed and sought $50,000 in damages.
¶ 13. At the hearing, Anderson first called Mr. Kennedy as an adverse witness. Anderson and his wife also testified. The defense tendered Mrs. Kennedy as their sole witness. At the close of evidence, the Kennedys moved to dismiss the complaint. They argued that there was a break in the chain of title, and as a result, Anderson had no standing to bring the lawsuit. The *345 chancellor denied the Kennedys motion and also dismissed their counterclaim with prejudice.
¶ 14. The chancellor enjoined each party from interfering with the rights of the other and found that neither party was entitled to damages. The chancellor held that a descriptive access easement was established as to Anderson. Finally, the chancellor assessed the Kennedys $1,000 in attorney fees payable to Anderson.
¶ 15. Aggrieved by this decision, the Kennedys filed a notice of appeal with the supreme court which then transferred the case to this Court. After a careful review, we reverse the chancellor's assessment of attorney fees. The decision is affirmed in all other respects.

STANDARD OF REVIEW
¶ 16. This Court follows a limited standard of review when addressing appeals from a chancery court. Buford v. Logue, 832 So.2d 594, 600 (¶ 14) (Miss.Ct.App.2002). "We shall not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous, or there was an application by the chancellor of an erroneous legal standard." Id.

LEGAL ANALYSIS

I. WHETHER THE TRIAL COURT ERRED IN AWARDING ANDERSON A DESCRIPTIVE ACCESS EASEMENT ACROSS THE KENNEDYS' PROPERTY SINCE THE CHAIN OF TITLE WAS INVALID

II. WHETHER THE TRIAL COURT ERRED IN FINDING THAT ANDERSON HAD STANDING TO INITIATE THE LITIGATION AT ISSUE
¶ 17. Since these two issues are so closely related, we will analyze them together. The Kennedys argue that Anderson failed to prove that he was the record owner of title to the easement at issue, and as a result, has no standing to litigate this matter.
¶ 18. There is no dispute as to whether the Kennedys were aware of the fact that their property was subject to an express access easement. There is also no dispute as to whether Anderson's deed contained language of the express access easement. Instead, the Kennedys argue that George Beane, Jr.'s wife, Melissa Beane, conveyed the Beane property without being a judicially determined heir. Consequently, the Kennedys argue that the later conveyance to Anderson is invalid.
¶ 19. When a person dies intestate his property vests immediately at death in his heirs. In Re McRight, 766 So.2d 48, 49 (¶ 10) (Miss.Ct.App.2000). More importantly, there is no requirement that a suit to establish heirship be brought. Matter of Heirship of McLeod, 506 So.2d 289, 291 (Miss.1987). Proceedings to establish heirship are only needed when there is a dispute as to the identity of a lawful heir or where a would-be heir seeks to establish his claim to the decedent's property to the exclusion of another's claim. Id. Finally, an easement may be acquired by express grant. Huggins v. Wright, 774 So.2d 408, 410(¶ 8) (Miss.2000).
¶ 20. The Kennedys contend that there is no proof that Melissa Beane was George Beane, Jr.'s sole heir at law. We disagree. The deed that Melissa Beane executed expressly states that she was George Beane, Jr.'s sole heir at law.
¶ 21. Moreover, no proof is required. As noted above, proof by way of judicial determination is only required in two circumstances. Since the Kennedys are not claiming an interest in the Beane property *346 and not claiming to be heirs of George Beane, Jr., there is no requirement that Melissa Beane be judicially determined as the sole heir of George Beane, Jr.
¶ 22. The record reveals that in 1992, Melissa Beane executed a deed that conveyed the Beane property to Charles Deloach. Two years later, Charles Deloach executed a deed that conveyed the property to Kenny and Lisa Deloach. On March 8, 2002, Kenny and Lisa Deloach executed a deed that conveyed the property to Anderson. Anderson filed his complaint in the Lee County Chancery Court on April 22, 2002.
¶ 23. Anderson is the record owner of title to the Beane property. Included in that bundle of rights is the descriptive access easement over the Kennedys' property. As a result, Anderson has standing in this civil action. We agree with the chancellor's decision on this issue and find no error.
III. WHETHER THE TRIAL COURT ERRED IN NOT FINDING THAT ANDERSON HAD THE BURDEN OF REPAIRING AND MAINTAINING THE EASEMENT
¶ 24. The Kennedys argue that Anderson "never exerted any effort whatsoever to fulfill his burden of maintenance and repair." The Kennedys argue that the chancellor erred in not recognizing this fact. Anderson argues that the chancellor did, in fact, find that he had the burden of maintenance and repair. Consequently, Anderson argues the issue is moot.
¶ 25. "Where a private right of way exists, the owners of the dominant and servient tenements must each use the way in such a manner as not to interfere with one another's utilization thereof." Feld v. Young Men's Hebrew Ass'n, 208 Miss. 451, 458, 44 So.2d 538 (Miss.1950). "An easement for ingress and egress is a straightforward concept that encompasses surface use and whatever improvements and maintenance to the roadway that are necessary to permit continued travel." Bivens v. Mobley, 724 So.2d 458, 464 (¶ 27) (Miss.Ct.App.1998). As a result, the owner of the dominant estate is entitled to work on the easement at his own expense so as to keep it reasonably usable as a road. Lindsey v. Shaw, 210 Miss. 333, 340, 49 So.2d 580, 584 (Miss.1950).
¶ 26. In his ruling, the chancellor stated the following:
[T]his man is entitled to get to and from his house. And he's going to get there, by order of this Court. I don't want any more obstructions constructed or erected on this easement by the defendants or their agents, employees, or anyone connected with them that would prohibit him from using this right-of-way. Or this easement is what it is. It's not just a right-of-way, but this easement to get to and from his house.
He'll [Anderson] be allowed to improve that easement to the extent that it becomes passable by a vehicle. And it doesn't have to be a four-wheel drive. I'm talking about any vehicle, including a Toyota Corolla, will be allowed to go up in and out there. And he'll be allowed to now go on that easement and make it passable by his own actions as he desires. And the defendants will not interfere with that.
¶ 27. After reviewing these findings, we hold that the chancellor did recognize that Anderson had the burden of repairing and maintaining the easement. Despite the fact that Anderson had not completed any repair work on the easement, the chancellor found that the Kennedys' actions constituted an unreasonable interference with Anderson's rights as owner of the dominant estate. In other words, the Kennedys prevented Anderson's attempts to carry *347 out his duty. We find no error. This issue is without merit.

IV. WHETHER THE TRIAL COURT ERRED IN FINDING THAT ANDERSON HAD A RIGHT TO PARK VEHICLES AND OTHERWISE TAKE DOMINANT POSSESSION OF THE EASEMENT
¶ 28. The Kennedys argue that they are entitled to full enjoyment of their property without interference from Anderson. The Kennedys contend that Anderson, his family, and friends repeatedly parked vehicles up and down the easement in an attempt to take dominant control of their property. Anderson acknowledged the fact that he did not have ownership of the underlying property. Rather, Anderson argues that he had no alterative than to drive his vehicle as far up the easement as he could without getting stuck and walk the rest of the way.
¶ 29. The owner of the dominant estate is authorized to make any use of the servient estate that is reasonably necessary to achieve the intended purpose of the easement. Bivens, 724 So.2d at 464 (¶ 26). After the chancellor's ruling, counsel for the Kennedys asked whether Anderson and his family would still be allowed to park on the easement. The chancellor stated that once the easement became open and passable, there would be no further need to park vehicles on the easement itself. The chancellor also stated that if the problem did persist then the Kennedys would certainly have a right to come back to court and claim a violation of the injunction.
¶ 30. We find this to be the correct decision. This issue is without merit.

V. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE KENNEDYS HAD SUFFERED NO DAMAGES
¶ 31. The Kennedys argue that they are entitled to damages. In their counterclaim, the Kennedys requested damages in the amount of $50,000 for the loss of their right to full enjoyment of the property, the loss of dominant possession of their property, damage to their fence, damage to the easement itself, along with pain and suffering.
¶ 32. Damages may be recovered only where and to the extent that the evidence removes their quantum from the realm of speculation and conjecture and transports it through the twilight zone and into the daylight of reasonable certainty. Adams v. U.S. Homecrafters, Inc., 744 So.2d 736, 740 (¶ 13) (Miss.1999). In addition, damages are not recoverable where it is impossible to say what of any portion of the damages resulted from the fault of the plaintiff and what portion from the fault of the defendant themselves. Ciba-Geigy Corp. v. Murphree, 653 So.2d 857, 869 (Miss.1994).
¶ 33. At the end of the hearing, the chancellor denied damages to either party expressly finding a lack of proper proof. He found that there had been some accusations and insinuations from both parties but no evidence as to what party, if any, was responsible. Likewise, the chancellor determined that there was no value attached to any of these accusations. The evidence was simply insufficient. See Williams v. King, 860 So.2d 847, 851 (¶ 18) (Miss.Ct.App.2003).
¶ 34. We find no manifest error in the chancellor's decision not to award damages to either party. This issue is without merit.

VI. WHETHER THE TRIAL COURT ERRED IN ASSESSING ATTORNEY FEES AGAINST THE KENNEDYS
*348 ¶ 35. The Kennedys argue that the chancellor erred in assessing attorney fees against them especially in light of the fact that neither party was awarded damages. The record reveals that the chancellor awarded Anderson attorney fees solely because he initiated the suit.
¶ 36. Mississippi, however, follows the American rule regarding attorney fees. Huggins, 774 So.2d at 412 (¶ 18). Unless there is a contractual provision or statutory authority providing for attorney fees, they may not be awarded as damages unless punitive damages are also proper. Id. at 412-13 (¶ 18).
¶ 37. In the instant case, there is no evidence of either a contractual provision or a statute authorizing attorney fees. Additionally, there was no award of any damages to either party much less punitive damages. As a result, we are forced to reverse the chancellor's finding on this point.

VII. WHETHER THE TRIAL COURT ERRED IN DISMISSING THE KENNEDYS' COUNTERCLAIM WITH PREJUDICE
¶ 38. Finally, the Kennedys argue that the dismissal of their counterclaim with prejudice effectively bars them from bringing any future claims against Anderson. We disagree. In Rayner v. Raytheon, Co., 858 So.2d 132, 134(¶ 9) (Miss.2003), the supreme court analyzed the phrase "with prejudice." The court held that "[g]enerally, a dismissal with prejudice connotes an adjudication on the merits." An adjudication on the merits is a final disposition that bars the right to bring or maintain an action on the same claim or cause. Id.
¶ 39. Therefore, the Kennedys cannot attempt to re-litigate the same facts and issues present in this case. However, this is no way impedes the Kennedys' right to bring suit against Anderson for any future behavior that may give rise to a cause of action concerning the easement. That is exactly why the chancellor issued the injunction.
¶ 40. We find no error in the chancellor's decision to dismiss the Kennedys' counterclaim with prejudice. This final issue is without merit.
¶ 41. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS REVERSED AND RENDERED AS TO THE ASSESSMENT OF ATTORNEY FEES, AND AFFIRMED IN ALL OTHER RESPECTS. COSTS OF APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANTS AND ONE-HALF TO THE APPELLEE.
KING, C.J., BRIDGES, P.J., LEE, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING AND BARNES, JJ., NOT PARTICIPATING.