# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00690-COA

**SEAN MCDOWELL AND JULIA MCDOWELL**  APPELLANTS/CROSS-APPELLEES

**v.**

**ZION BAPTIST CHURCH**  APPELLEE/CROSS-APPELLANT

DATE OF JUDGMENT: 04/13/2015
TRIAL JUDGE: HON. JOHN ANDREW HATCHER
COURT FROM WHICH APPEALED: PONTOTOC COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANTS: THOMAS MELVIN MCELROY
ATTORNEY FOR APPELLEE: LEO JOSEPH CARMODY JR.
NATURE OF THE CASE: CIVIL - REAL PROPERTY
TRIAL COURT DISPOSITION: GRANTED THE APPELLEE/CROSS-APPELLANT THE RIGHT TO REPAIR AND MAINTAIN THE EASEMENT BUT DENIED THE APPELLEE/CROSS-APPELLANT'S REQUEST FOR ATTORNEY'S FEES
DISPOSITION: AFFIRMED - 11/01/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1. This appeal and cross-appeal arise from a dispute between Zion Baptist Church and Sean and Julia McDowell over whether Zion possessed the authority to place gravel on a driveway easement the McDowells granted to Zion. On February 9, 2015, Zion filed a motion to enforce a provision in the parties' "Memorandum of Settlement" that provided for the placement of gravel on the easement. The Pontotoc County Chancery Court had previously approved the settlement memorandum in a consent judgment entered on

September 25, 2014. Following Zion's motion to enforce the settlement provision, the McDowells filed a motion to dismiss.

¶2. After a hearing on the parties' motions, the chancellor entered a final judgment incorporating the parties' settlement memorandum into the court's prior consent judgment. The chancellor concluded that Zion, as the dominant estate owner of the driveway easement, possessed the duty to reasonably repair and maintain the driveway at its own expense. As a result, the chancellor found that Zion possessed the authority to place gravel on the easement as needed. Upon finding that the McDowells improperly, but in good faith, impeded and prohibited Zion from maintaining the driveway easement, the chancellor denied Zion's request for attorney's fees. The chancellor also dismissed with prejudice the McDowells' motion to dismiss.

¶3. Aggrieved by the chancellor's final judgment, the McDowells appealed, and Zion cross-appealed. On appeal, the McDowells raise the following issues: (1) whether the chancellor lacked jurisdiction to enforce the settlement memorandum; (2) whether the chancellor erred by modifying his consent judgment to incorporate the parties' settlement memorandum; (3) whether the chancellor erred by enforcing the maintenance provision contained in the settlement memorandum; (4) whether the Southern Building Code (SBC) permitted the placement of gravel on the easement;[1] (5) whether the settlement memorandum

---

[1] Zion filed with this Court a motion to strike the portions of the McDowells' brief and brief addendum that reference and rely on the SBC. The McDowells filed a response asking this Court to take judicial notice of the materials at issue, and Zion then filed a reply to the McDowells' response. On February 24, 2016, this Court entered an order stating that, in adjudicating the merits of this appeal and cross-appeal, the Court would also consider Zion's motion to strike, the McDowells' response, and the portion of Zion's reply regarding

authorized Zion to place gravel and timber markers on the easement; and (6) whether the chancellor erred by granting Zion an implied right to maintain the easement. On cross-appeal, Zion raises the following issues: (1) whether the chancellor erred by considering evidence the McDowells submitted after Zion filed its motion to enforce; and (2) whether the chancellor erred by denying Zion's request for attorney's fees.

¶4.     Finding no error in the chancellor's judgment, we affirm.

**FACTS**

¶5.     On May 19, 2009, Julia sent Zion a letter stating that she and her husband would soon take ownership of her mother's property adjacent to Zion's property. Julia's letter expressed her belief that part of Zion's church buildings extended onto the McDowells' property. The letter further stated, however, that the McDowells would continue to give permission to Zion to use the land as long as the church's use remained unchanged.

¶6.     On June 20, 2013, Zion sent a letter to the McDowells asking that the McDowells cease construction of a physical barrier between the parties' properties. Zion contended that much of the barrier was situated on land owned by Zion. On July 9, 2013, Zion filed a petition to quiet and confirm title to the real property at issue and to obtain a permanent injunction to prevent the McDowells from interfering with Zion's quiet enjoyment of the property. In addition, Zion filed a motion for a preliminary injunction to enjoin the McDowells from placing or constructing a barrier on the disputed property until the chancellor had adjudicated the true boundary line between the parties' properties.

the McDowells' judicial-notice claim.

¶7.    The parties entered formal settlement negotiations, which resulted in a "Memorandum of Settlement." The settlement memorandum provided for the conveyance of certain tracts of land and the grant of easements for ingress and egress. In pertinent part, the settlement memorandum stated that the parties agreed the McDowells would grant an easement to Zion "for ingress and egress over the east/west driveway and for parking during church functions and related church activities." The parties further agreed in the settlement memorandum "that the northern boundary of the east/west driveway shall be marked via landscaping timbers and that gravel may be placed on the surface of the driveway." In addition, the settlement memorandum provided that the parties "mutually agree not to impede access on or to either driveway referenced in this settlement memorandum."

¶8.    During a hearing on April 2, 2014, the chancellor questioned the parties about their settlement memorandum and whether they understood the terms and believed the agreement to be in their best interests. After the parties answered affirmatively, the chancellor stated, "[T]he [c]ourt hereby ratifies, adopts, approves, affirms[,] and confirms this agreement as the order, judgment[,] and decree of this [c]ourt, effective and binding on all of you immediately . . . ."

¶9.    Then, on September 25, 2014, the chancellor entered a consent judgment in the matter. In the consent judgment, the chancellor noted that Zion had moved to dismiss its claims against the McDowells and that the parties had "reached an amicable resolution of the claims at issue." The chancellor then discussed each of the conveyances to which the parties had agreed in their settlement memorandum. In concluding his order, the chancellor stated that

the parties "shall not impede access on or to either easement referenced herein," and he granted Zion's motion to dismiss with prejudice its claims against the McDowells. The consent judgment failed to specifically include the settlement memorandum's maintenance provision about the placing of timber markers and gravel on the driveway easement.

¶10.    On February 9, 2015, Zion filed a motion to enforce the provisions of the parties' settlement memorandum. Specifically, Zion asked the chancellor to enter an order to allow Zion to place gravel on the driveway easement and to plant landscaping timbers to mark the driveway's boundary. As stated, although the chancellor's consent order discussed the easement to Zion, the order failed to specifically reference or include the portion of the settlement memorandum providing for these maintenance actions relating to the driveway.

¶11.    In its motion to enforce the settlement memorandum's provisions, Zion asked the chancellor to specifically authorize the placing of the timbers and the gravel so that Zion could maintain the driveway in a safe and suitable condition. Zion contended that, even though it had offered to pay all associated costs, the McDowells had violated the terms of the settlement memorandum by repeatedly refusing to let Zion spread gravel on the driveway. Zion also alleged that, due to recent storms, the driveway had become impassable and unfit for use as intended by the parties. In addition to asking the chancellor to authorize these maintenance actions, Zion asserted that the McDowells' refusal to honor the parties' settlement memorandum had forced Zion to file the motion to compel. As a result, Zion asked the chancellor to award Zion all the costs and expenses incurred in bringing the action, including attorney's fees. On February 20, 2015, the McDowells filed a motion to dismiss

Zion's motion to enforce.

¶12.    After a hearing on the parties' motions, the chancellor entered his judgment on April 13, 2015.  The chancellor dismissed with prejudice the McDowells' motion to dismiss.  He also ordered the parties' settlement memorandum to be incorporated into his September 2014 consent judgment, thereby authorizing the maintenance actions requested by Zion.  The chancellor further concluded that, as the dominant estate owner of the driveway easement, Zion possessed the continued duty to reasonably repair and maintain the driveway at its own expense.  The chancellor found that such maintenance duties included replacing gravel and timber markers as needed.  In addition, the chancellor found that the McDowells had improperly, but in good faith, impeded and prohibited Zion from repairing and maintaining the driveway easement.  Based on his findings, the chancellor denied all other requested relief, including Zion's request for attorney's fees and damages.

¶13.    Aggrieved by the chancellor's judgment, the McDowells appealed and raised the six aforementioned assignments of error.  Zion cross-appealed and raised the two aforementioned assignments of error.  Zion also filed with this Court a motion to strike portions of the McDowells' appellate brief addendum that referenced the SBC, as well as any arguments in the McDowells' brief that relied on such materials.  According to Zion, the McDowells failed to introduce the disputed materials during the proceedings before the chancellor.  In their response to Zion's motion to strike, the McDowells argued that the chancellor considered a newer version of the SBC when he reviewed provisions from the International Building Code (IBC).  The McDowells further asked this Court to take judicial

6

notice of the SBC materials referenced in their brief and the addendum. Zion subsequently filed a motion for leave to reply to the McDowells' response. In its attached proposed reply, Zion reasserted the arguments in its motion to strike and asserted a counterargument to the McDowells' judicial-notice claim. In turn, the McDowells filed a response to Zion's motion for leave to reply.

¶14. On February 24, 2016, this Court entered an order stating the following:

> The McDowells are correct that Rule 27(a) [of the Mississippi Rules of Appellate Procedure] does not provide a movant with a guaranteed right to file a reply to a nonmovant's response. The Court finds that Zion's proposed reply shall be accepted, but only as it relates to the McDowells' judicial-notice argument. For [the] sake of . . . judicial economy and expediting a final decision, no further motions, responses, or replies regarding the subject matter discussed within this order shall be filed. Zion's motion to strike, the McDowells' response, and the judicial-notice portion of Zion's reply shall all be passed for consideration with the merits of the appeal.

## STANDARD OF REVIEW

¶15. We apply the following standard of review to the chancellor's judgment:

> On appeal, this Court will not reverse a chancery court's findings, be they of ultimate fact or of evidentiary fact, where there is substantial evidence supporting those findings. We only disturb a chancellor's findings of fact where the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. We review questions of law de novo.

*Estate of Regan v. Estate of LeBlanc*, 179 So. 3d 1155, 1157 (¶8) (Miss. Ct. App. 2015) (internal citations and quotation marks omitted).

## DISCUSSION

### I.      The McDowells' Appeal

¶16. In asserting their six assignments of error on appeal, the McDowells argue that the

7

chancellor erred by incorporating the settlement memorandum into the consent judgment, by enforcing the maintenance provision contained in the settlement memorandum, and by granting Zion maintenance rights over the driveway easement. Based on these alleged errors, the McDowells ask this Court to reverse the chancellor's judgment.

> **a.     Whether the chancellor lacked jurisdiction to enforce the settlement memorandum.**
>
> **b.     Whether the chancellor erred by modifying his consent judgment to incorporate the parties' settlement memorandum.**
>
> **c.     Whether the chancellor erred by enforcing the maintenance provision contained in the settlement memorandum.**

¶17.    As a threshold matter, this Court must determine whether the chancellor lacked subject-matter jurisdiction to enforce the provisions of the settlement memorandum. This Court reviews de novo questions of jurisdiction. *Maurer v. Boyd*, 111 So. 3d 690, 693 (¶10) (Miss. Ct. App. 2013).

¶18.    The McDowells assert that the chancellor lacked jurisdiction because he dismissed the case without incorporating the terms of the settlement memorandum into his consent judgment. The McDowells further claim that the chancellor lacked the authority to retroactively incorporate the settlement memorandum after he entered the consent judgment. As a result, the McDowells argue that the settlement memorandum—and its maintenance provision—no longer remained enforceable after the chancellor entered the consent judgment and the parties executed the quitclaim deeds.

¶19.    According to the McDowells, "to properly exercise jurisdiction over the enforcement

8

of a prejudgment settlement agreement after dismissal of the underlying case, the prejudgment agreement must either be expressly and unequivocally incorporated into the final judgment, . . . or the court must expressly retain jurisdiction to enforce the agreement . . . ." The McDowells contend that neither of these conditions applies in the present case and that the chancellor therefore relinquished his authority "to handle any further matters associated with the case other than to enforce the final judgment."

¶20.    To support their argument that the chancellor lacked jurisdiction to enforce the settlement memorandum after he entered the consent judgment, the McDowells cite *Stone v. Stone*, 385 So. 2d 610 (Miss. 1980).  In addressing the principles established in *Stone*, the Mississippi Supreme Court has previously stated:

> [C]aselaw establishes that property settlement agreements are contractual in nature and are not subject to modification or contingent upon a final divorce decree.  This Court, in *Stone* . . . , stated:
>
>> The property settlement entered into between the parties was not made subject to the approval of the chancery court; therefore, all of the provisions of the agreement except those pertaining to support of the wife, child support[,] and custody retained a purely contractual nature.  The provisions of the agreement pertaining to support of the wife and children and custody of the children were subject to modification by the chancery court in the divorce action, but the provisions pertaining to the conveyance and use of the land, the occupancy of the residence house by the wife, the duty of the husband to maintain the real property and the assignment of life insurance policies were permissible subjects of a contractual agreement.

*Barton v. Barton*, 790 So. 2d 169, 172 (¶10) (Miss. 2001) (quoting *Stone*, 385 So. 2d at 612).

¶21.    Like the supreme court, this Court has also previously acknowledged the enforceability of settlement agreements and consent judgments.  In discussing the issue, this

9

Court stated:

> Although an agreed order or consent decree is in the nature of a contract, it is also a judgment of the issuing court, subject to the court's enforcement powers. . . . [W]hile a settlement is simply an agreement between the parties and can only be enforced by a subsequent suit, a consent decree has the force of a judgment and can be enforced by judicial sanctions, including citation for contempt, if the decree is violated.
>
> . . . .
>
> The court's ability to hold a person in contempt for violation of an agreed order, thus, **depends not on the agreement of the parties but on the agreement being incorporated into an order of the court and subject to enforcement as a court order**.

*Riley v. Wiggins*, 908 So. 2d 893, 899 (¶15) (Miss. Ct. App. 2005) (emphasis added and internal citations and quotation marks omitted).

¶22.    As previously stated, the McDowells argue that the parties' settlement memorandum retained only a contractual nature and was not subject to modification because the chancellor allegedly failed to incorporate the memorandum into his consent judgment. Despite the McDowells' assertions, however, the chancellor found that he retained jurisdiction over the parties' underlying dispute.[2] In his final judgment, the chancellor rejected the McDowells' argument that the consent judgment superseded and extinguished the parties' settlement memorandum. Instead, the chancellor found that the consent judgment indeed incorporated the terms of the settlement memorandum. The chancellor based his finding on a sentence from the consent judgment, which stated that the chancellor had considered the settlement

---

[2] *Cf. Noble House Inc. v. W&W Plumbing & Heating Inc.*, 881 So. 2d 377, 382-83 (¶¶18-23) (Miss. Ct. App. 2004) (finding that, under the particular circumstances of the case, the circuit court did not abuse its discretion by amending the agreed order to provide the relief originally intended).

memorandum submitted by the parties and had been advised that the parties had reached an amicable resolution on all claims. In addition, the chancellor further stated in his final judgment that the terms of the settlement memorandum had been "dictated into the record, sworn to by the parties[,] and adopted of record . . . by the [c]ourt as its [o]rder . . . ."

¶23. The chancellor also concluded in his final judgment that he possessed authority under Rule 60(a) of the Mississippi Rules of Civil Procedure to enforce his own judgments and to correct or clarify the same. Rule 60(a) provides as follows:

> Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders up until the time the record is transmitted by the clerk of the trial court to the appellate court and the action remains pending therein. Thereafter, such mistakes may be so corrected only with leave of the appellate court.

¶24. Our jurisprudence clearly reflects the authority of a chancellor to incorporate by reference a settlement agreement into a final judgment.[3] As support for the chancellor's judgment in the present case, the record reflects that the chancellor reviewed the terms of the settlement memorandum and the parties' consent to the terms both before and upon entering the consent judgment. During the April 2, 2014 hearing, the chancellor questioned the parties about the settlement memorandum. After the parties affirmed that they understood the memorandum, the chancellor stated, "[T]he [c]ourt hereby ratifies, adopts, approves, affirms[,] and confirms this agreement as the order, judgment[,] and decree of this [c]ourt,

---

[3] *See and compare Wilson v. Wilson*, 53 So. 3d 865, 868 (¶11) (Miss. Ct. App. 2011) (acknowledging that a settlement agreement may be incorporated into a divorce judgment if the chancellor finds the agreement's terms are adequate and sufficient).

11

effective and binding on all of you immediately. . . ." In addition, upon entering the consent judgment on September 25, 2014, to dismiss Zion's claims against the McDowells, the chancellor referenced the parties' easement and their settlement memorandum.[4]

¶25.    In *Noble House*, the circuit court entered an agreed judgment of dismissal after two of the parties advised the circuit court that they had reached a settlement. *Noble House*, 881 So. 2d at 382 (¶18).  The circuit court later amended the agreed order to reflect the original intended relief. *Id.* at 383 (¶23).  Upon review, this Court found no abuse of discretion. *Id.*

¶26.    In the present case, the McDowells raise no dispute on appeal as to the chancellor's authority to enforce a consent judgment or to correct and clarify such a judgment.  However, the McDowells argue that Rule 60(a) only authorizes the correction of clerical errors and fails to authorize substantive changes.  Despite the McDowells' argument to the contrary, we find that the chancellor made no substantial changes to the consent judgment.

¶27.    During the April 2, 2014 hearing, the chancellor approved the parties' settlement memorandum and ensured that the parties understood and consented to the terms of the memorandum.  Then, in his September 25, 2014 consent judgment, the chancellor expressly referenced the parties' settlement memorandum.  Through this reference, the chancellor incorporated the parties' settlement memorandum into the consent judgment.  As the record further reflects, the chancellor recognized the parties' settlement agreement as a decree of the court.  As a result, we find sufficient evidence in the record to show incorporation and

---

[4] *Cf. Perkins v. Perkins*, 787 So. 2d 1256, 1260 (¶6) (Miss. 2001) (finding insufficient documentation in the record of the settlement agreement incorporated into the chancellor's final judgment).

to show that the chancellor possessed the authority to enforce his own prior order.[5]  We therefore find no abuse of discretion by the chancellor's decision.  Accordingly, these assignments of error lack merit.

### d.	Whether the SBC permitted the placement of gravel on the easement.

¶28.	The McDowells further claim that the settlement memorandum and the consent judgment "unambiguously require [Zion] to abide by the [SBC], which does not permit [Zion] to place gravel after performing work on the easement area."  As previously discussed, Zion filed a motion to strike the portions of the McDowells' brief and brief addendum that reference and rely on the SBC.  According to Zion, the McDowells never introduced evidence of the SBC's provisions during the proceedings before the chancellor.  As a result, Zion argues that the McDowells are procedurally barred from introducing this evidence on appeal.

¶29.	In response to Zion's motion, the McDowells filed a response asking this Court to take judicial notice of the SBC excerpts referenced in their brief and included in their brief addendum.  The McDowells further argue that the chancellor considered a newer version of the SBC when he reviewed the provisions of the IBC.  They also assert that Zion failed to appeal either the chancellor's presumption that the IBC's relevant provisions are identical to those of the SBC or his finding that the IBC prevented the placement of gravel on the driveway easement.

¶30.	As the record reflects, Zion filed a reply to the McDowells' response.  This Court

_____

[5] *See Noble House*, 881 So. 2d at 383 (¶23).

13

decided to adjudicate the merits of Zion's motion to strike, the McDowells' response, and the judicial-notice portion of Zion's reply with the merits of the appeal and cross-appeal. We therefore address these filings as part of this overall issue raised by the McDowells on appeal.

¶31. Our caselaw clearly establishes that we will not review evidence for the first time on appeal. *Craft v. Craft*, 32 So. 3d 1232, 1243 (¶29) (Miss. Ct. App. 2010). "We will not go outside the record to find facts and will not consider any statement of facts attempted to be supplied by counsel in briefs." *Estate of Myers v. Myers*, 498 So. 2d 376, 378 (Miss. 1986) (citation omitted). However, "[w]hile parties on appeal may not add to the record under [Mississippi Rule of Appellate Procedure] 10(f), [the appellate court] may take judicial notice of an adjudicative fact, pursuant to [Mississippi Rule of Evidence] 201 . . . ." *Thompson v. Jones*, 17 So. 3d 524, 528 (¶17) (Miss. 2008). Rule 201(b) provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

¶32. In his final judgment, the chancellor acknowledged that the McDowells had attached to their posttrial brief a fifteen-page excerpt from the IBC, which the chancellor stated had replaced the Standard Building Code in 1999. The chancellor further stated:

> The [c]ourt has before it no evidence of the [SBC] or the Mississippi Department of Health requirements, or even if such a [c]ode [as the SBC] exists. Assuming, though, [that] the requirements of the [SBC] are the same as those provided by the [McDowells] in their [b]rief, then under the provisions of the [IBC], the placing of gravel on the easement, as all agreed

14

could be done in the Memorandum of Settlement Conference and Agreement on the record, could not be done, which clearly was not the agreement or intent of the parties.

¶33. As the record reflects, the McDowells failed to present any evidence of the SBC to the chancellor for his consideration. We therefore decline to review this evidence for the first time on appeal. *See Craft*, 32 So. 3d at 1243 (¶29). Accordingly, we deny the McDowells' request that we take judicial notice of these materials, and we grant Zion's motion to strike the portions of the McDowells' brief and brief addendum that reference and rely on the SBC.

e.    **Whether the settlement memorandum authorized Zion to place gravel and timber markers on the easement.**

¶34. The McDowells next contend that, even if the settlement memorandum is enforceable, the memorandum's maintenance provision fails to authorize Zion to plant timbers or place gravel on the driveway easement. Instead, the McDowells argue that the settlement memorandum authorized only them, and not Zion, to maintain the easement. Alternatively, the McDowells claim that, if the maintenance provision is ambiguous as to who possessed the responsibility to place the timbers and the gravel, the chancellor should have found that the parties clearly intended for the McDowells to perform the work. The McDowells also reassert their argument that the settlement memorandum clearly requires whoever is responsible for maintaining the easement to abide by the SBC, which finds gravel to be an inappropriate ground surface for the driveway easement.

¶35. As previously stated, we do not disturb a chancellor's factual findings when they are supported by substantial evidence. *Estate of Regan*, 179 So. 3d at 1157 (¶8). Instead, we

15

only disturb such findings if "the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard." *Id.* (citation omitted). In reviewing this issue, we find the record contains substantial credible evidence to support the chancellor's findings that, as the dominant estate owner of the easement, and pursuant to the parties' settlement memorandum, Zion possessed the authority to place timber markers and gravel on the driveway easement.[6] As a result, we find no merit to this assignment of error.

### f. Whether the chancellor erred by granting Zion an implied right to maintain the easement.

¶36. The McDowells next assert that the chancellor erred by granting Zion an implied right to maintain the easement because they possessed a superior right to maintain their property and because they had reasonably maintained the easement. According to the McDowells, the chancellor "failed to consider a landowner's right to maintain [his] own property[,] and more importantly, the court implied the right to maintain [in favor of Zion] despite the parties' agreement to the contrary and their undisputed intent regarding maintenance."

¶37. In concluding that Zion, as the dominant easement estate owner, possessed "the burden by caselaw to repair and maintain the driveway easement," the chancellor cited *Kennedy v. Anderson*, 881 So. 2d 340 (Miss. Ct. App. 2004). In *Kennedy*, the dominant estate owner claimed that the servient estate owners, who owned the land, had prevented him from using an express access easement. *Id.* at 342 (¶1). The servient estate owners counterclaimed and asserted that the dominant estate owner's use of the easement had damaged their property. *Id.* After a hearing, the chancellor "found that neither party was

---

[6] *See Kennedy v. Anderson*, 881 So. 2d 340, 346 (¶25) (Miss. Ct. App. 2004).

16

damaged[,] and [he] enjoined each party from interfering with the rights of the other. The chancellor [also] found that a descriptive access easement was established as to [the dominant estate owner]." *Id.*

¶38. Following the chancellor's judgment in *Kennedy*, the servient estate owners appealed. *Id.* In addressing the burden of maintaining and repairing the easement, this Court stated:

> Where a private right of way exists, the owners of the dominant and servient tenements must each use the way in such a manner as not to interfere with one another's utilization thereof. An easement for ingress and egress is a straightforward concept that encompasses surface use and whatever improvements and maintenance to the roadway that are necessary to permit continued travel. As a result, the owner of the dominant estate is entitled to work on the easement at his own expense so as to keep it reasonably usable as a road.

*Id.* at 346 (¶25) (internal citations and quotation marks omitted).

¶39. Our caselaw further states:

> In construing the language of an easement, the rules for the interpretation of deeds and other written instruments apply. An instrument that is clear, definite, explicit, harmonious in all its provisions[,] and free from ambiguity must be given effect. The courts rely on the four corners doctrine. Under that doctrine, an instrument is considered as a whole, in order to ascertain the intention of the parties. In other words, an instrument should be construed in a manner which makes sense to an intelligent layman familiar only with the basics of [the] English language.
>
> Only if a contract or deed is ambiguous within its four corners will construction of those provisions involve triable issues of fact.

*Hobgood v. Koch Pipeline Se. Inc.*, 769 So. 2d 838, 843 (¶¶24-25) (Miss. Ct. App. 2000) (internal citations and quotation marks omitted). As we discussed in *Hobgood*, Mississippi courts have construed right-of-way instruments that are clear and unambiguous to convey the right to maintain. *Id.* at 844 (¶¶27-28).

17

¶40. In *Rowell v. Turnage*, 618 So. 2d 81, 85 (Miss. 1993), the supreme court acknowledged the following:

> While it is true that the owner of an easement obtained by grant or prescription has the implied right to work the land to keep it in a reasonably useable condition for its intended purpose, the easement owner cannot lawfully take dominant possession and deal with the land upon which [the] easement exists as if he were the owner of the land.

(Internal quotation marks omitted) (quoting *McDonald v. Bd. of Miss. Levee Comm'rs*, 646 F. Supp. 449, 466 (N.D. Miss. 1986).

¶41. In the present case, the chancellor determined that the parties' settlement memorandum showed their clear intent to place gravel on the driveway easement. The record reflects that the terms of the settlement memorandum itself supported the chancellor's determination. We therefore find no error in the chancellor's finding that Zion possessed an implied right to maintain the easement. Accordingly, this issue lacks merit.

## II. Zion's Cross-Appeal

¶42. On cross-appeal, Zion argues the following: (1) that the chancellor erred by considering evidence submitted by the McDowells after Zion filed its motion to enforce; and (2) the chancellor erred by denying Zion's request for attorney's fees.

### a. Whether the chancellor erred by considering evidence the McDowells submitted after Zion filed its motion to enforce.

¶43. Zion first asserts on cross-appeal that the chancellor erroneously considered evidence the McDowells submitted after Zion filed its motion to enforce. Zion argues that the McDowells' untimely submission of the disputed materials deprived Zion of the opportunity to respond to the evidence. Zion therefore asserts that, if this Court remands this matter for

18

further proceedings, we should find the chancellor erred in considering the materials the McDowells submitted after the hearing.

¶44.    "The standard of review applied to a trial court's decision to admit or [exclude] evidence is abuse of discretion.  However, we will not reverse a trial court's decision unless the error adversely affects a substantial right of a party." *Walker v. State*, 55 So. 3d 212, 216 (¶14) (Miss. Ct. App. 2011) (internal citations and quotation marks omitted).  We also acknowledge the following:

> A litigant desiring to avail herself of the right to present more evidentiary material has an affirmative duty to timely raise the issue with the trial court or be deemed to have waived objection to the court proceeding on the motion. . . . Said differently, when a litigant seeks to submit [evidence] after the conclusion of a . . . hearing, that litigant is required to object or move for continuance at the hearing.

*Hariel v. Biloxi HMA Inc.*, 964 So. 2d 600, 608-09 (¶38) (Miss. Ct. App. 2007) (internal citations and quotation marks omitted).

¶45.    The record here reflects that, at the close of the hearing on Zion's motion to enforce the settlement memorandum's provisions, the chancellor asked the parties' attorneys to provide any updated caselaw they found on the parties' maintenance rights and responsibilities related to the easement.  Zion contends, however, that the McDowells exceeded the chancellor's request for updated caselaw.  In its cross-appeal, Zion claims that, "[d]espite the limited nature of the [chancellor's] request, the McDowells submitted numerous documents, photographs, and other materials that were not offered into evidence at the March 20, 2015 hearing."  Zion further asserts that, despite its objection to these untimely submitted materials, the chancellor acknowledged that he considered the materials

19

in determining that Zion was entitled to place gravel on the driveway easement.

¶46. After reviewing this issue on cross-appeal, we find that the chancellor's decision failed to adversely affect a substantial right possessed by Zion. As a result, we decline to address the merits of this issue or to reverse the chancellor's decision with regard to this particular assignment of error. *See Walker*, 55 So. 3d at 216 (¶14).

### b. Whether the chancellor erred by denying Zion's request for attorney's fees.

¶47. Zion next argues that the chancellor erroneously denied its request for attorney's fees. Zion alleges that attorney's fees were proper because the McDowells refused to honor the express terms of the settlement memorandum and willfully violated the chancellor's consent judgment. Zion further claims that attorney's fees were appropriate because the McDowells filed a frivolous appeal. Based on these assertions, Zion asks this Court to render a judgment awarding it all reasonable attorney's fees and expenses incurred in enforcing the settlement memorandum and defending against the McDowells' appeal.

¶48. "The decision to award monetary sanctions is left to the discretion of the trial court. This Court reviews a judgment denying sanctions for abuse of discretion." *Hampton v. Blackmon*, 145 So. 3d 632, 634 (¶7) (Miss. 2014) (citations omitted). As the record reflects, Zion first contends that attorney's fees were proper under Mississippi Code Annotated section 11-55-5(1) (Rev. 2012) because the McDowells improperly and unnecessarily expanded proceedings without substantial justification. Section 11-55-5(1) states:

> Except as otherwise provided in this chapter, in any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorney's fees and costs against any party or attorney if the court,

20

upon the motion of any party or on its own motion, finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure.

¶49.    Zion also argues that attorney's fees were proper under Rule 38 of the Mississippi Rules of Appellate Procedure because the McDowells filed a frivolous lawsuit. Rule 38 provides for the award of damages where the appellate court finds an appeal is frivolous. "This Court has evaluated Rule 38 frivolity by reference to [Rule] 11 [of the Mississippi Rules of Civil Procedure]. An appeal is frivolous when, objectively speaking, the appellant has no hope of success." *McCoy v. City of Florence*, 949 So. 2d 69, 85 (¶61) (Miss. Ct. App. 2006) (internal citations and quotation marks omitted).

¶50.    In adjudicating the issue of attorney's fees and damages, the chancellor found that the McDowells improperly, but in good faith, impeded Zion from placing gravel on the driveway easement. In denying Zion's request for attorney's fees, the chancellor stated that each party would be responsible for its own attorney's fees since "there was no contractual provision or statutory authority in the case for attorney's fees, and there was no evidence of monetary damages to either party, much less punitive damages." *Cf. Miss. Power Co. v. Hanson*, 905 So. 2d 547, 552 (¶¶24-26) (Miss. 2005) (affirming the denial of attorney's fees to the defendant where the trial court dismissed the plaintiff's claims with prejudice but found no independent statutory authority or exceptional circumstances existed for the award of attorney's fees). Upon review, we find no abuse of discretion by the chancellor's denial of attorney's fees. As a result, this argument lacks merit.

¶51.   **THE JUDGMENT OF THE PONTOTOC COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANTS/CROSS-APPELLEES AND ONE-HALF TO THE APPELLEE/CROSS-APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**