# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00457-COA

**JOHN GIRANI**                                                                    **APPELLANT**

**v.**

**JOHN TAYLOR LOVORN**                                                    **APPELLEE**

DATE OF JUDGMENT:              03/01/2017
TRIAL JUDGE:                    HON. JOHN S. GRANT III
COURT FROM WHICH APPEALED:  RANKIN COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:    DAVID RINGER
                                    BRENTON MATTHEW CARTER
ATTORNEY FOR APPELLEE:      JAMES WALTER NEWMAN IV
NATURE OF THE CASE:         CIVIL - REAL PROPERTY
DISPOSITION:                    AFFIRMED: 10/09/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., WILSON AND TINDELL, JJ.

### TINDELL, J., FOR THE COURT:

¶1. This appeal involves a dispute between neighbors over the use of a boat ramp. John Girani appeals the Rankin County Chancery Court's judgment finding he was not entitled to any type of easement or license to access the boat ramp, which was largely situated on John Taylor Lovorn's land. On appeal, Girani argues the chancellor erred by finding he possessed neither an easement by estoppel nor an irrevocable license to use the boat ramp. Finding no error, we affirm the chancellor's judgment.

## FACTS

¶2. Girani and Lovorn are neighbors in a Rankin County subdivision. The parties own

adjoining lots on a lake used for water skiing. In August 1995, Girani acquired by warranty deed two lots from John and Minnie Jo Stewart (collectively, the Stewarts). Lovorn acquired his adjoining lot in August 2006 by warranty deed from Michael Smith (Smith) and his wife, Patricia (collectively, the Smiths).

¶3. When the Stewarts and the Smiths still owned the lots, they and two other neighboring families decided to access the lake by deepening a drainage ditch, building a boat ramp, and constructing retaining walls. One retaining wall ran along the Smiths' property while the other ran along the Stewarts' property. The boat ramp itself was located almost entirely on the Smiths' lot, with a small portion extending onto the Stewarts' property. In exchange for sharing the cost of the project, all four families received permission to freely use the boat ramp.

¶4. After Girani purchased his lots from the Stewarts, and before Lovorn acquired his lot, Girani, the Smiths, and the two other contributing families performed repairs and renovations to the boat ramp. Girani testified on direct examination that, since purchasing his property, he had contributed around $25,000 to $30,000 for the repair and maintenance of the boat ramp and retaining walls. Girani further stated he only made these expenditures because he believed he could use the boat ramp whenever he wished. On cross-examination, though, Girani admitted that his expenditures were actually used to replace and maintain only the retaining wall and deck area on his property.

¶5. Girani further testified that, before Lovorn acquired the Smiths' lot, no one had ever barred Girani from accessing the boat ramp. However, after Lovorn acquired his lot, Girani

2

testified that Lovorn parked vehicles in front of the boat ramp and that Lovorn's wife told Girani he would have to obtain permission to use the boat ramp. Following these events, Girani filed a complaint against Lovorn in chancery court. Girani asked the chancellor to find he held an easement by estoppel to the portion of Lovorn's land containing the boat ramp. Alternatively, Girani asked the chancellor to find he held an irrevocable license to use the boat ramp and water channel. In addition, Girani asked the chancellor to find he was entitled to adequate consideration for the support his land provided for the boat ramp and/or channel.

¶6. At trial, both Girani and Lovorn testified. Smith also testified about the construction and use of the boat ramp and about selling his land to Lovorn. When Smith conveyed his property to Lovorn, he told Lovorn about the boat-ramp project and identified the contributing families who had permission to use the boat ramp. Smith admitted, however, that neither Girani nor any of the other contributing families had ever requested a written easement from him. Smith also testified that the warranty deed he conveyed to Lovorn contained no easement regarding the boat ramp and that, in fact, no such written easement had ever existed. Following the trial, the chancellor entered a March 1, 2017 judgment denying with prejudice all Girani's requested relief.

¶7. Aggrieved, Girani appeals.

## STANDARD OF REVIEW

¶8. We will not disturb a chancellor's factual findings when supported by substantial credible evidence. *McDowell v. Zion Baptist Church*, 203 So. 3d 676, 681 (¶15) (Miss. Ct.

3

App. 2016). We only reverse where the chancellor manifestly erred, was clearly erroneous, or applied an erroneous legal standard. *Id.* However, we review questions of law de novo. *Id.*

## DISCUSSION

¶9. Although Girani acknowledges Mississippi caselaw generally fails to recognize either easements by estoppel or irrevocable licenses, he asserts equity allows courts to employ such remedies to prevent injustice. Contending the facts of this case support judicial recognition that he has either an easement by estoppel or an irrevocable license to access Lovorn's boat ramp, Girani asks this Court to modify or extend existing Mississippi caselaw to provide for such remedies.

¶10. "[A]n easement is an interest in land subject to the statute of frauds, and any agreement to convey or transfer an easement must comply with the statute of frauds, and be conveyed by written deed." 37 C.J.S. *Statute of Frauds* § 66 (2017). Where recognized, however, an easement by estoppel provides an exception to the statutes imposing the requirement of a writing. *Id.* at § 67. The Mississippi Supreme Court has defined easement by estoppel to mean:

> [A]n easement which is created when a landlord voluntarily imposes an apparent servitude on his property and another person, acting reasonably, believes that the servitude is permanent and in reliance upon that belief does something that he would not have otherwise or refrains from doing something that he would have done otherwise.

*Gulf Park Water Co. v. First Ocean Springs Dev. Co.*, 530 So. 2d 1325, 1332 (Miss. 1988) (quoting *United States v. Thompson*, 272 F. Supp. 774, 784 (E.D. Ark. 1967)). In contrast

4

to an easement, a license "confers no interest in the land but merely gives one the authority to do a particular act on another's land . . . and . . . may be created orally." 37 C.J.S. *Statute of Frauds* § 66. "However, it . . . has been said that an irrevocable license is . . . an easement rather than a license." 53 C.J.S. *Licenses* § 147 (2017).

¶11.    In the present case, Girani admits no written instrument ever existed to grant him permission to use the boat ramp on Lovorn's land. He therefore relies solely on the remedies of easement by estoppel and irrevocable license for his requested relief. Recognizing that our supreme court has previously looked unfavorably on both irrevocable licenses and easements by estoppel, Girani asks this Court to extend or modify existing Mississippi caselaw on this issue. *See Gulf Park Water Co.*, 530 So. 2d at 1335 (providing that Mississippi "does not recognize 'irrevocable licenses'"); *Belzoni Oil Co. v. Yazoo & Miss. Valley R.R. Co.*, 94 Miss. 58, 58, 47 So. 468, 472-73 (1908) (refusing to change licenses into an irrevocable right on the basis of equitable estoppel); *Beck v. New Orleans & Tex. Ry. Co.*, 65 Miss. 172, 176, 3 So. 252, 252 (1887) (declining to recognize irrevocable licenses). Upon review, we decline to do so. *See Cahn v. Copac Inc.*, 198 So. 3d 347, 358 (¶35) (Miss. Ct. App. 2015) ("[T]his Court does not have the authority to overrule or ignore supreme court precedent."). We therefore find this assignment of error lacks merit.

## CONCLUSION

¶12.    Because existing Mississippi caselaw and substantial credible record evidence support the chancellor's finding Girani was not entitled to any type of easement or license to use the boat ramp on Lovorn's land, we affirm.

5

¶13. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**